*Seghers,* for appellant.    *Slidell,* for appellee.

---

## ROWLETT vs. SHEPHERD.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

The regular mode for the defendant in execution to procure an injunction is by an opposition filed in court.

If he resorts to a petition, and assumes the character of plaintiff, the trial and other proceedings must be governed by the rules which would have regulated them had the opposition been regularly filed.

EASTERN DIS.
May, 1832.

ROWLETT
vs.
SHEPHERD.

Where trial is gone into on the merits without asking for a decision on an exception, the exception is considered as waived.

The rights of the buyer to resist payment of interest, depend on the law in force at the time of the contract.

The third possessor of property specially affected by mortgage is disquieted by a suit against the debtor, and may withhold payment.

A tender of money to the creditor, or, in case of his refusal, a consignment of it, was not necessary to enable the debtor to resist the payment of interest under the provisions of the old code.

The facts are stated in the opinion of the court, delivered by PORTER, J.

This action commenced by an executory process to enforce payment of the three last instalments of a sugar plantation, purchased by the defendant from one Fleckner. Of these instalments, the plaintiff is the assignee. The existence of the debt is not contested, and a tender of it was made previous to the institution of this suit. The object in contestation is the interest due on these instalments from the time they respectively became due. The defendant contends that, owing to the pendency of a suit, and the existence of certain mortgages on the property, he was not in default, and had a right to retain the money in his hands.

But though this be the sole matter which enters into the merits of the case, other questions have grown out of this litigation, on which the opinion of the court must be expressed. The defendant objects to the regularity of the proceedings in the court below. He contends legal notice was not given of the seizure, and that the cause was tried without issue joined. If either of these positions be true, and the irregularity has not been waived, the cause must be remanded to be proceeded in according to law.

And, first, as to the want of notice. The *Code of Practice*, *articles* 734, 735, 736, provide, that where the creditor is in possession of an act importing a confession of judge-

ment, he may proceed against the debtor or his heirs by a simple petition, and without citation, as provided *paragraph* 3, *section* 2, *chapter* 3 *of the first part of the Code.* That in such case, it shall suffice to give three days notice to the debtor, and that, where the property which is subject to seizure is within the jurisdiction, and the debtor resides out of it, the court shall direct to the sheriff of the parish where the debtor resides, a written notice, to be given to him; which he must serve, and return, says the code, in the same manner as in ordinary citations.

The notice here spoken of was not served on the defendant, but left with a person who resides on the plantation, and the defendant does not live in the parish, but he does reside within the jurisdiction of the court.

It has been a subject of much discussion on the argument, whether the notice, thus directed to be given, is not, in all respects, the same as a citation in an ordinary suit, and whether the want of it, does not so vitiate the proceedings as to render them null and void; as it has also been, whether the debtor, living within the jurisdiction of the court, though out of the parish, falls within the rule which requires personal notice. But on neither of these questions do we find it necessary to come to a conclusion. The reasons why we have not, will appear obvious, by an opinion we have formed on another part of the cause.

The second ground of irregularity, alleged in the proceedings below, is the trial there, without issue joined. The weight to which this objection may be entitled, cannot be well understood without recurring to the pleadings, and the proceedings, previous to trial in the court of the first instance. The petition of the plaintiff is in the ordinary form, and after setting out the instrument on which the debt is due, and alleging failure on the part of the defendant to pay the debt, it prays for the seizure and sale of the property mortgaged. This seizure and sale were ordered as prayed for, and the execution was stopped by an injunction issued by the judge on a petition in the usual form, in which the defendant in the

*via executiva*, takes the character of plaintiff, after setting out those matters on which the injunction is prayed, it concludes with a demand that the plaintiff in the executory proceeding and the sheriff may be cited; that the petitioner may have general relief, and that the cause be tried by a jury.

This petition was filed, and the injunction obtained, on the 26th October, 1831. Nearly one month after, viz. on the 25th November, a rule was taken by the petitioner, Rowlett, in these words: "It is ordered by the court, that the defendant James H. Shepherd, show cause on Saturday, the third day of December next, why the injunction obtained by him on his petition, filed in this court to that effect, against the order of seizure and sale in this case, should not be dissolved and set aside."

When the rule came on for trial, and the counsel for the plaintiff proposed to swear the jury, the defendant objected to any inquiry being instituted as to the regularity of the proceedings in obtaining the injunction in the case of *Shepherd* vs. *Rowlett and the Sheriff*, on the ground, that said suit was a distinct and independent suit, and that the rule should be taken therein, and not in the executory proceeding of *Rowlett* vs. *Shepherd*. He also objected to going to trial, because the day had not been fixed on which the cause should be tried, according to the rules of court.

The judge overruled both objections. The first, because the petition of the defendant, Shepherd, for injunction, was to be considered in the light of an opposition, or an answer to the plaintiff's petition; and the second, because the proceeding was a summary one.

The second ground of objection has not been pressed in this court, and the decision of the judge appears obviously correct. The first has been much relied on, and requires a more particular notice. It appears, however, to the court, not to present a question of any great difficulty. The Code of Practice has provided that the debtor against whom an order of seizure and sale shall have been rendered, may obtain an injunction to suspend the sale, if before it takes place, he files

Eastern Dis.
May, 1832.

ROWLETT
vs.
SHEPHERD.

The regular mode for the defendant in execution to procure an injunction, is by an opposition filed in court.

in the court issuing the order, his opposition in writing. Code of Practice, 738. By the act of the legislature adopting this code, and giving it the force of law, all other rules of practice were repealed. It follows, therefore, that a debtor may obtain an injunction against an order of seizure and sale, by filing an opposition; and if there exists no other law giving this remedy, it follows it cannot be obtained under another form of proceeding. The same authority which confers the right can limit the remedy, and it must be pursued as indicated. The articles in the same work to which we have been referred, wherein it is declared that injunctions may be obtained by a petition, strengthen this construction; for they enumerate many cases where relief in that mode may be pursued, and the case before the court is not one of them. The 741st article provides, that the plaintiff against whom the injunction has been obtained, may compel the defendant to prove, in a summary manner before the judge, the truth of the facts alleged in his opposition. This enactment shows, very clearly, that the legislature consider the parties in such cases in quite a different character from what they would be, if the party obtaining the injunction was plaintiff. The

If he resorts to a petition, and assumes the character of plaintiff, the trial and other proceedings must be governed by the rules which would have regulated them had the opposition been regularly filed.

judge, therefore, committed no error prejudicial to the defendant, when he gave him the same right, and the same opportunity of maintaining his injunction, as he would have had, if the objections to the order of seizure and sale had been regularly and formally presented as an opposition.

This opinion disposes of the second bill of exceptions to the opinion of the judge refusing to submit the cause to the jury with instructions, "that as the allegations in the petition had not been put at issue by an answer of Rowlett, they must be taken as true." This position was doubtless correct, if the petition could have been legally considered as a distinct suit, and not as an opposition and answer to one already commenced. But viewed in the latter light, and we think such is the correct way to view it, the judge did not err. It was the duty of the defendant, under the article of the Code of Practice already cited, to prove the truth of the facts alleged by him.

And it is on this ground we think the objection to the want of citation was waived. It is true, as stated in argument, that citation is the basis on which every suit must rest; but appearance and pleading to the merits is always considered to cure the defect. Here the defendant appeared and pleaded to the merits, but before doing so he expressly excepted to the want of citation. Whether, under our law, where exceptions, though they must precede in order, may be put in at the same time with an answer to the merits; the objection to the want of citation could be considered as abandoned by presenting the *contestatio lites* on other matters, need not be decided. In this instance the party went to trial on the merits, without requiring a decision on the exception, and this we consider a clear waiver of it. Nor is the effect of this waiver, in our opinion, at all weakened by the defendant requesting the judge, after the evidence was heard, to charge the jury, that unless notice had been given of the order of seizure and sale, it should be set aside. The only object of citation is to give the party sued an opportunity to make his defence, and after he has made it he cannot object that this opportunity was not afforded to him.

When trial is gone into on the merits, without asking for a decision on an exception, the exception is considered as waived.

The merits of the cause remain for consideration. The objection to the payment of interest rests, as we have stated, on two grounds. The pendency of a suit by which the defendant's right and title to the property was put at issue, and the existence of mortgages which incumbered it.

The defendant purchased the plantation and slaves, which formed the consideration of the money now sued for, from one Fleckner, and Fleckner bought from a person called Nelder. In the sale from Nelder he states the plantation to have belonged, at one time, to himself and a certain Edward Pearse, then deceased; and that he, Nelder, was the owner of the whole property, by inheritance from Pearse.

Before the first instalment of the moneys now sued for became due, one Grace Hodder, heir and representative of Elizabeth Pearse, who was mother of Edward Pearse, commenced an action against the defendant, demanding from him

one-third of the plantation and slaves, and also the sum of fifty thousand dollars, the proportion of the petitioner's share in the revenues made on the plantation since it had come into his possession.

This demand was based on the allegation that at the time Nelder was instituted the universal heir of Pearse, the mother of the latter was living, and that, being his forced heir, the former could only take under the will the one-third of the property of which the testator died possessed.

The defendant answered this petition, and called the representatives of Fleckner, his vendor, and the present plaintiff in warranty. Judgement was rendered in favor of the petitioners in the District Court, and on appeal the judgement was reversed; this court being of opinion that the plaintiffs should, previously to suing the third possessor, have discussed the property of the donee. The case will be found reported in 1 L. Rep. 505.

Immediately after this decision was made, an action was commenced against Nelder, and the defendant was made a party to it. From Nelder was claimed the sum of two hundred thousand dollars; and from the defendant, twenty thousand dollars a year from the time he had become possessor of the plantation.

Shepherd, after filing an answer on the merits, again threw himself for protection on his warrantors. They appeared and pleaded as an exception to the action against him, that the plaintiffs must first proceed, and discuss the property of Nelder. The court sustained this exception, and the cause was contested between the plaintiffs and Nelder. It was terminated in this court by a judgement against the latter, for one hundred and one dollars and twenty-eight cents. 2 L. Rep. 525.

The rights of the buyer to resist payment of interest depend on the law in force at the time of the contract.

The law in force at the time the defendant acquired the land, provided, that if the buyer be disquieted by an action, whether hypothecary or in revindication, he might suspend payment of the price; and certainly no case could present

facts which would more emphatically bring it within this provision, than that now before us does. The suit instituted against the defendant put in issue his title to a large portion of the premises, and rendered his right to the portion claimed uncertain. It was sufficient to put any purchaser on his guard, and justified the use of precautionary measures. Up to the moment the demand against the defendant was dismissed in the second action, there can be no doubt it was such a disturbance as authorized the buyer to withhold payment. That took place on the third day of December, 1830. The only debatable ground is, whether, under the circumstances, the defendant was authorized to consider the suit against Nelder such a trouble as justified his refusal to make payment. We think it was. He had already learned, by a decision of this court, that the property purchased by him was ultimately responsible for the claim there sought to be enforced. Neither the words of the law, nor the reason of the thing, require the disquietude to result alone from a suit against the buyer. The pendency of an action against any one, the judgement in which may be satisfied out of the property bought, troubles the purchaser. The fact of the suit terminating by a judgement for a very small amount, compared with the extravagant claims in the petition, can in no manner affect this conclusion. The law does not make the right to withhold payment depend on such a circumstance. If it did, it would have provided for the trouble produced by a judgement, and not for that occasioned by a suit. Had the case terminated by a decree in favor of Nelder, the influence of it on the present action would, in our opinion, be just the same. The law does not impose on the buyer the obligation of knowing how the suit will terminate. If it did, it would impose a very unreasonable obligation on him.

This brings us to the question which was fully and ably discussed on the argument, whether the buyer can resist the payment of interest, even where he is troubled by a suit, when he has not deposited the money in court.

Eastern Dis.
May, 1832.

ROWLETT
vs.
SHEPHERD.

The third possessor of property specially affected by mortgage, is disquieted by a suit against the debtor, and may withhold payment.

EASTERN DIS.
May, 1832.

ROWLETT
vs.
SHEPHERD.

A tender of money to the creditor, or in case of his refusal, a consignment of it, was not necessary to enable the debtor to resist the payment of interest under the provisions of the old code.

The first ground taken in opposition to his right to do so, rests on the position, that the case must be governed by the provisions of the Louisiana Code. In the suit of *Thompson* vs. *Dupuy*, decided at the last March term, we held, in relation to a purchase made under the old code, that the right of the buyer to resist payment must be tested by the law under which he acquired the property. The point, however, was not made in the argument of that cause. Now we enjoy the benefit of an ample discussion of it. The law, at the time of the contract, we assume for the moment, did not oblige the debtor to pay interest on a certain contingency. The law, as it now stands, we also assume, does oblige him to pay interest upon this contingency, unless he makes a deposite of the money in court. The subsequent provision, therefore, adds an obligation to the contract of the debtor, which the law did not impose at the time he entered into it. It changes the agreement, and renders it more burthensome. It compels him to pay interest, where the law of the contract would not. This is widely different from a change in the remedy to enforce performance. It increases the obligation of one party, and augments the rights of the other. We expressed ourselves so fully on the power of the legislature to modify previous contracts, by subsequent laws, in the case of *Sabatier et als.* vs. *their Creditors*, that we have little to add to what was there said. We think with the Supreme Court of the United States, that any law imposing conditions which were not in the contract at the time it was made, or dispensing with those that were, violates its obligation. The rule may seem, at first view, to be laid down broadly, but on reflection it will be found, that no other satisfies the constitution, or affords adequate protection against retrospective legislation. 6 *Mar. N. S.* 585. 8 *Wheaton*, 1.

Immediately after the establishment of this court, in the year 1814, it was decided the buyer could not resist the payment of interest by reason of mortgages existing on his property, unless he had offered the money to the seller, and in case of his refusal to receive it, consigned it for his use.

3 *Martin*, 245. That decision was not followed, and in several
cases which have arisen since, a different principle has been acted on. 6 *Martin*, 659. 8 *Martin N. S.* 214. 1 *L. Rep.* 81.

The case in 3 *Martin* was decided on the provisions found in the French, and in the Roman law. By these systems of jurisprudence, where the property sold produced fruits, the buyer owed interest from the time of delivery, although a term had been given him for the payment. It is not surprising, therefore, that in these countries, where the purchaser owed interest before the price could be demanded of him, he also owed interest when he retained the money in consequence of the incumbrances which affected the property; for the right to retain which the law gave him in the one case, could not be stronger than that conferred on him by the terms of the contract in the other. Pothier, indeed, on the authority of Covarrurias, denies the buyer owes interest before the credit given for payment expires. But his opinion has not been adopted in France. Paillette, in his notes on 1652 and 1653 articles of the Napoleon Code, examines the subject, and treats it with his accustomed learning. The rule, he says, was otherwise, and the Napoleon Code has not changed it. He adds, as a corollary, from the obligation of the buyer to pay interest from the moment he enters into possession that, even in those cases where, by the terms of the contract, the buyer is authorized to retain the money until mortgages are removed, he still owes the interest. In support of this opinion, he cites several decisions of the tribunals of France. *Manuel de Droit Français, Code Nap.* arts. 1652, 1653.

Our Civil Code required interpretation with reference to the laws of Spain, not those of France or Rome; and if, in any instance, that rule was departed from, it was the duty of the court to retrace its steps. It has done so; and now, on an attentive consideration of the authorities within our reach, we think it wisely retraced them. The Spanish law differed from the French on this subject. Where the object sold produced fruits, it gave interest from the time the money was

payable, and not before.    Febrero states, that the buyer may retain the price until he is made secure against the threatened eviction.    The author of the *Curia Phillipica*, thus lays down the rule where the buyer reaps fruits from the property: "*En recompensa de ellos debe pagar al vendedor el interes del precio porque se la vendio, desde que se le debia pagar, hasta que se le pague.*"    He should pay interest from the time he ought to have paid the price, until he does pay it.    *Curia Phillip. lib.* 2, *cap.* 2. *no*: 24.    *Febrero, p.* 1, *cap.* 7, § 1, *no.* 44.

By the rule established in the Civil Code, when ought the buyer to pay the price ?    Not at the time the money is payable by contract if a suit is pending, but at the time that suit is determined, unless the seller chooses to give security. If, on general principles, the soundness of the doctrine could be doubted, it surely cannot, in reference to the express terms of this contract.    By them it was stipulated that the purchaser should retain in his hands an amount equal to all incumbrances.    He certainly, therefore, ought not to pay interest for failing to deposite money, when, by the words of the agreement, he was made the depository.    *C. Code,* 360, *art.* 65.

A real tender having been made of the sum really due, the plaintiff cannot have judgement for the costs.    *C. P.* 415.

It is, therefore, ordered, adjudged, and decreed, that the judgement of the District Court be annulled, avoided, and reversed, and it is further ordered, and decreed, that the plaintiff do recover of the defendant the sum of forty-eight thousand dollars, but that the plaintiff pay costs in both courts.

*Grymes,* for appellee.    *Slidell,* for appellant.