EASTERN DIS
July, 1841.

BALL ET AL.
vs.
LE BRETON
ET AL.

---

## BALL ET AL. *vs.* LE BRETON ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where notes, given for the price of property, producing fruits and revenues, are by agreement or otherwise, to remain deposited and payment suspended, until certain defects in the title are cured, on their restoration, payment of the interest arising *ex morâ* will be decreed, as a compensation for the fruits of the thing sold, when it remained in the enjoyment of the vendee.

The purchaser who wishes to relieve himself from the payment of interest must avail himself of the faculty given him to *deposit the price* due by him.

EASTERN DIS.
July, 1841.

BALL ET AL.
vs.
LE BRETON
ET AL.

Where the purchaser is actually disturbed in the possession and enjoyment of the thing sold, he can require security before payment of the price can be demanded.

The defendants in this case had given their notes for a large property called the "Rope Walk," in New Orleans, belonging to the Balls, and sold by them to effect a partition. It was alleged there was a defect in the title of one of the late owners and that her interest had not been legally divested. The notes of the purchasers were deposited in court to await the perfection of the title in all respects, but in the meantime the purchasers were in possession. See the case 15 La. Reports, 173. On the decision of the suit and when the title was declared valid the plaintiffs demanded payment of the notes, which had been temporarily suspended, *with interest from maturity.*

The defendants resisted payment and especially *interest*, because the title was supposed defective, and the payment of the notes suspended until it was declared valid.

2. That they were disturbed in their possession by the claim of a third person. The record of a suit in the parish court was produced in evidence, showing an actual disturbance.

There was judgment for the plaintiffs for the amount of the several notes given by the defendants but *without interest*; and that execution be stayed until the plaintiffs pass an act of sale for the share in the property sold belonging to Clarissa Ball, *an insane* and interdicted person; and until the plaintiffs give security according to the article 2535 of the La. Code, against the claim of J. M. Hall, set up to the property, &c., in the sum of $36,000. The plaintiffs appealed.

*Preston,* for the plaintiffs.

*L. Janin,* for the defendants.

*Bullard, J.* delivered the opinion of the court.

Two questions only have been presented for our solution in the present case. 1st. Whether the defendants are liable to pay interest at five per cent. from the maturity of their notes given for real estate, under the agreement between the parties, that

the notes were to remain in deposit until certain defects in the title should be cured, and particularly since the defendants were disturbed in their enjoyment of the property bought, by their suit with Oakey or Hall; and 2dly. Whether the disturbance be such as authorizes them under the provisions of the Code to withhold payment until security shall be given by their vendors.

I. In order to understand the first ground and to appreciate justly the arguments of the defendants' counsel in support of their claim to be exonerated from the payment of legal interest arising *ex morâ*, it becomes necessary to recapitulate the principal facts which led to the present controversy as shown in the case of Ball *vs.* Ball, 15 La. Reports, 173. The defendants, who had purchased the Rope Walk, having discovered that a portion of the property belonging to one of the heirs of Ball, who was *non compos mentis*, had been sold irregularly, and that there still existed a mortgage for upwards of twenty-one thousand dollars in favor of the heirs of R. Ball, declined at first to pay, but it was agreed that the cash part of the price should be paid at once, but that the notes to be given for two-thirds should remain deposited in the Bank of Louisiana, until those defects in the title should be cured. It was afterwards agreed, however, that the purchasers should retain one-third of the price as their security until the vendors should have complied with their engagement to perfect the title. The vendors having taken such steps as they considered sufficient for that purpose, took a rule on the defendants to show cause, why the notes thus deposited should not be delivered to them. That rule was made absolute by a judgment of the District Court which was afterwards affirmed on the appeal. The notes were thereupon given up, and having been protested for non-payment, the present action was brought to recover their amounts together with interest at five per cent. from maturity, on the ground that they were given for real estate.

It is argued by the defendants that according to the last agreement it was clearly the intention of the parties, that the

EASTERN DIS.
July, 1841.

BALL ET AL.
vs.
LE BRETON
ET AL.

time of payment of the notes should be extended until after the decision of the Supreme Court, and that if it had been intended at the time that the notes should be paid at maturity the parties would have selected a bank which pays interest upon its deposits, and the agreement would have specified the notes and their proceeds when paid. That even if the notes had been paid at maturity the plaintiffs would have received no interest, because they were deposited in a bank which pays none upon deposits. The plaintiffs are therefore not injured and it was immaterial to them whether money or notes were deposited.

*Where notes, given for the price of property, producing fruits and revenues, are by agreement or otherwise, to remain deposited and payment suspended, until certain defects in the title are cured, on their restoration, payment of the interest arising ex morâ will be decreed, as a compensation for the fruits of the thing sold, when it remained in the enjoyment of the vendee.*

It appears to us that the agreement of the parties did not modify essentially the contract between them. It restrained the negotiability of the notes, and suspended the obligation to pay and the right to coerce payment until after the decision of the court upon the title. To deduce from the agreement *alone* an intention on the part of the plaintiffs to take back the notes after the court should have decided, without the right to claim the interest which may have accrued in the mean time *ex morâ*, as a compensation for fruits of the thing sold, which continued to be enjoyed by the defendants, would be a forced construction of the agreement, in which no allusion is made to interest, and would seem to militate against the maxim, " *nemo facilè presumitur donare.*" On the contrary, it would seem but just, that whenever the restoration of the notes was decreed, they should revert to the vendors undiminished in value or amount, as if they had never been out of their possession. We cannot see in the tenor of the agreement any expression which would authorize us to conclude that the plaintiffs were not to be paid ultimately the interest as well as principal, in the event of the defects of title being cured to the satisfaction of the court.

So far as to the agreement of the parties ; but how does the matter stand under the law which authorizes the buyer to withhold payment in case of disturbance unless security be given ? .

If this question were to be settled in the present case with

reference to the provisions of the Code of 1808, it cannot be denied that several decisions of this court fully sustain the pretensions of the defendants to be exonerated from the payment of interest accruing during the existence of the disturbance and while the obligation to pay was suspended. Besides the case of Miles vs. Oden, in which it was held that the debtor for a number of slaves, who was a stakeholder, was not bound to pay interest during the contest between an attaching creditor and an assignee of the original creditor, because not in *morâ*; (8 Martin, N. S., 214,) we have that of Jiovellina vs. Minor et al., (1 La. Rep., 76,) in which the doctrine was recognized, but in that case it was shown that the money had been tendered as soon as due. But the court says that "after the day of judgment if the debtor be prevented, by the act positive or negative of the creditor, or if the latter withdraw or conceal himself, the debtor is not in fault and owes no interest or damages. His obligation to keep the money ready to be paid on demand prevents him from parting with it to make it produce interest, except at his own risk." A previous case reported in the 6th Martin's Rep., 657, that of Boatong vs. Ducommon, is still stronger to the same effect. In the case of Daquin et al. vs. Coiron, 3 La. Rep., 409, the court says " we are of opinion that interest cannot be recovered on those sums which became due after the defendant was disturbed in his possession. The case comes entirely within the principle already decided in that of Jiovellina vs. Minor et al., 1 La. Rep., 72. The vendor had no right to ask for payment until he tendered security, and until that was done the vendee was not in default for not paying." To the same effect was the case of Rowlet vs. Shepherd, 4 La. Rep., 95.

On the other hand, the decision of this court in the case, Duplantier vs. Pigman, 3 Martin's Rep., 245, is in favor of allowing the interest, and has, we cannot disguise it, been explicitly overruled in the cases above mentioned. The court says, " but in the present case, it is contended that interest ought not to be recovered because the buyer is not bound to pay the ori-

EASTERN DIS.
July, 1841.

BALL ET AL.
vs.
LE BRETON
ET AL.

EASTERN DIS.
July, 1841.

BALL ET AL.
vs.
LE BRETON
ET AL.

ginal debt, until he be secured in his possession; and this objection appeared to the court to have considerable weight; however, on examining the law we find that it is the actual possession and enjoyment of the property which gives the right to the seller to claim interest, and that so long as the purchaser remains in possession he is bound to pay it on the price, unless he offer the money to the seller, and consign it for his use in case he refuses to receive it; it being considered unjust that the purchaser should at the same time enjoy both the price and the thing sold."

All these decisions were made with reference to the Code of 1808; the case now before us arose under the existing Louisiana Code, which contains some express provisions on this subject, besides those in the former Code.

Article 2531 declares that the "buyer owes interest on the price of the sale until the payment of the capital in the three following cases:

1. If it has been so agreed at the time of the sale.

2. If the thing sold produces fruit or any other income.

3. If he has been sued for the payment."

Article 2535 provides that the buyer who is disquieted in his possession or has just reason to fear that he will be disquieted by an action of mortgage or any other claim, may suspend the payment of the price until the seller has restored him to quiet possession, unless the seller prefer to give security; and the next article provides, that the seller who cannot receive the price from inability to give security, may compel the buyer to deposit the price, subject to the order of the court to await the decision of the suit. And article 2537, that the purchaser may also require the deposit, to *relieve himself from the payment of interest*.

To withhold or suspend payment does not necessarily imply a forfeiture of any part of the debt or of its accessaries. The creditor who is unable to give security may require the deposit. He may require it to be made in a bank which pays interest on deposits. If he do not, and consents to leave it in the hands

of the debtor, the latter becomes a quasi pledgee, and being at the same time in the enjoyment of the property sold, it would seem should be bound in equity to pay the interest, which is a compensation for fruits, unless he in his turn chooses to relieve himself from the payment of the interest by depositing the price. It has been said in argument that the provision of the Code which authorizes the creditor to require the deposit, is arbitrary and confers a faculty which may be used oppressively; but it must not be forgotten that it is only the creditor unable to give security and who consequently cannot coerce payment, who enjoys this privilege. The provision appears to us a wise one. It enables the vendor to cause the money due him to be placed in a safe bank which pays interest on deposits and at the same time deprives the debtor of one motive for colluding with pretended claimants to the property sold, in order to put off the day of payment while he is in the enjoyment both of the thing and the price.

We are of opinion that these provisions of the new Code have made the law to be as it was first understood and interpreted by this court in 1814, in the case of Duplantier *vs.* Pigman, and that the purchaser who wishes to relieve himself from the payment of interest must avail himself of the faculty, given him by the amendments of the Code, to deposit the price due by him. It is probable the jurisconsults who prepared the amendments to the Code adopted this first decision as most consonant to general principles and made it the basis of their amendment of this part of the Code of 1808.

On the second point we concur with the court below that the disturbance shown is such as to authorize the defendants to require security. The evidence shows that it was an actual disturbance. A part of the land apparently embraced by the title of the defendants was advertised for sale as the property of Oakey or Hall. In this state of things we cannot enquire into the titles and decide which party will ultimately prevail. Only one of the parties is before us, and if both were, it would

EASTERN DIS.
*July*, 1841.

BALL ET AL.
*vs.*
LE BRETON
ET AL.

The purchaser who wishes to relieve himself from the payment of interest must avail himself of the faculty given him, to *deposit the price* due by him.

Where the purchaser is actually disturbed in the possession and enjoyment of the thing sold, he can require security before payment of the price can be demanded.

Eastern Dis.
*July*, 1841.

be improper to go into the merits of that controversy in the present case.

It is therefore adjudged and decreed that the judgment of the District Court be reversed ; and proceeding to render such judgment as in our opinion ought to have been given below, it is further adjudged and decreed that the plaintiffs recover of N. B. Le Breton and P. A. Rost, in solido, the sum of $18,005 ; of H. F. Deblieux and Louis Janin, in solido, the sum of $6,005; and of H. F. Deblieux a further sum of $12,002 50, with interest at five per cent. per annum from the time their notes fell due respectively on the amounts thereof : but it is ordered that execution be stayed until the plaintiffs shall have given security to the satisfaction of the District Court, according to article 2535 of the Civil Code, in the sum of thirty-six thousand dollars, to protect the defendants against the claims of J. M. Hall upon the property sold ; and that the defendants pay the costs of both courts.