## No. 11,574.

### CITIZENS BANK OF LOUISIANA VS. HEIRS OF EDWARD J. GAY.

Both parties are before the court.

By this conclusion there remains no question to determine regarding citation or waiver of service by plaintiffs of defendants' injunction.

Legislative Act 100, in so far as it relates to the Citizens Bank, has not the effect of a contract, and does not secure the shareholders from future " calls."

The remedy of the plaintiff bank is not limited to the seizure and sale of the bank shares.

The mortgage stockholders of the Citizens Bank are not (in person) sureties for the bonds issued by the State of Louisiana in aid of the bank. The *securities* held by the bank were given in pledge by the bank as security for the debt. The ownership of these securities was retained by the bank.

If an extension of time has been given to the bank or the State, or a discharge, it does not have the effect of discharging the shareholders who are indebted to the bank, and who are securities on values deposited as security.

Whether the Legislature created two corporations or one has no bearing upon the issues so far as relates to the shareholders who have bound themselves to pay the amount of their subscription.

Under the circumstances it will not be assumed that the cash stockholders who are not parties to the suit should also pay the call, despite the fact that they have paid their shares in full.

The hearing as to them must be contradictory.

The " calls " made on the shareholders are personal obligations, and not subject to a prescription of less than ten years.

The plaintiffs, by their answer to the injunction, in which they did not pray for a judgment, or seek in any manner to release the seizure of the property, did not change the proceedings from the *via executiva* to the *via ordinaria*.

APPEAL from the Fourteenth Judicial District Court, Parish of Iberville. *Guion, J.*, in place of *Talbot, J.*, recused.

*Henry Denis* for Plaintiff, Appellee.

*Walter B. Somerville* and *Carleton Hunt* for Defendants, Appellants.

The opinion of the court was delivered by

BREAUX, J.   The plaintiff seized a plantation of the defendants under executory process, in order to satisfy contributions of two dollars per share on certain shares of stock of the bank with eight per cent. interest, secured by mortgage.

The sale of the property involved was stayed by an injunction.

The District Court rendered judgment in favor of the plaintiff bank.

A suspensive appeal from the judgment was allowed the defendants.

### CONTRADICTORY HEARING WITH PARTIES IN INTEREST.

The defendants allege that the Citizens Bank is not the real party in interest; that the real parties are certain bondholders represented by the commercial house of Hope & Co., of Amsterdam, who have assumed entire control of its assets.

The evident purpose of the defendants on this point was to obtain a contradictory hearing with Hope & Co., and to urge all their defences, both against the Citizens Bank and against that company.

They, Hope & Co., being parties to the suit, we will consider the different grounds as urged against both in the order in which they have been argued and thereby eliminate from further consideration questions relating to the real parties in interest—*i. e.*, whether it is the Citizens Bank or the commercial house of Hope & Co.

In 1836 William Dodd, owner of the property in question, mortgaged it to the Citizens Bank as a subscriber for a number of shares of stock to secure his subscription.

In 1853 the widow and heirs of Dodd, having become the owners of four hundred and fifty shares, formerly belonging to William Dodd, of the capital stock of the bank, acknowledged their indebted-

ness to the bank, and in order to secure the amount, gave a mortgage and pledged and pawned the four hundred and fifty shares to the bank.

In all the notarial acts, including the act under which the late Edward J. Gay (from whom the defendants inherited the property involved) acquired that portion known as the Kunemann plantation, the bank's right as a creditor is acknowledged.

During many years he paid instalments on stock notes to the Citizens Bank, secured by the mortgage on the Kunemann plantation.

The evidence does not show that the bank transferred this claim to Hope & Co., or to any one else. It remains on the books in the name of the creditor; it is in its possession and under its control. It collects these mortgages and remits the amounts collected to the firm of Hope & Co.

It would seem that the debtors to the bank are bound by their own acts and declarations contained in notarial deeds.

The subscriber promised to pay the corporation every share opposite his name, and this promise still remains and binds those who have since assumed to pay the obligation.

The late Mr. Gay assumed the payment of this indebtedness to the bank.

The defendants, his heirs, succeeded only to his rights, and can not stand in a better position than he did himself, *nemo plus juris quam ipse habit*.

But it is contended that legislation relative to this bank and agreements between the bondholders and the bank have had the effect of transferring the mortgages given for stock from the bank to the State and the holders of the bonds.

Sec. 3 of the act approved January 30, 1836, provided, in order to obtain capital for the bank, that *for the guaranty* of the bonds to be emitted by the State in favor of the Citizens Bank, and of the interest thereof, and for which the State pledged its faith, all the securities granted by the acts of incorporation of said bank to the holders of its bonds *are transferred* to the State and to the holders of the bonds. (Italics are ours.)

This was not a transfer without restriction or qualification. The securities were transferred only for the purpose of guaranty.

The clause can have no meaning, the court said in Citizens Bank

vs. Levee Steam Cotton Press, 7 An. 287, except to transfer these securities, to the State, as a "species of pledge."

As property pledged, these mortgages, given for stock, remained the property of the pledgor. On payment of the debt, the Citizens Bank would have had a right to a restoration of the property.

These securities, thus pledged, were the property of the bank and not of the stockholders.

Manifestly, under the terms of the statutory pledge, it was intended, upon payment and release of the bank, these securities would remain as its property and continue in its possession.

Having concluded that the defendants are not guarantors of stock, we take up the next proposition.

### THE REMEDY NOT EXCLUSIVELY IN REM.

Down to the time of Act No. 100 of 1847, it is urged by counsel for defendants: *the only remedy available to the plaintiff bank was in rem by seizure and sale of the bank shares. That the act gave to the bank the right to make calls for contributions upon stockholders, and has the effect of a contract and secures the stockholders from future calls.*

On the first point, to-wit., that the remedy to the plaintiff was *in rem*, we believe that lengthy discussion on our part is unnecessary.

The point was argued in Succession of Thompson, 46 An. ——, and after very attentive consideration the conclusion in that case was, that the subscribers are liable personally for the amount of their subscription and thereby determined that the remedy was not limited to an action *in rem*.

In the cited case the court said:

"There is no question in this case of any implied promise. The promise is absolute and express, and the right of action to collect by personal action is unquestionable. We see nothing to take this particular subscription out of the general rule, and the evidence in the record establishes that Adam Thompson, when he purchased the shares of stock referred to herein, and the property mortgaged to secure the same, assumed all the obligations of a shareholder in the bank. The personal obligation as resulting from his purchases from Bishop is equally clear."

The defendant contended in that case that where the bank has bought at sale under its foreclosure the stock notes and mortgaged property, the owner is relieved from all liability by the forfeiture

and sale of his shares for any deficiency of proceeds of sale to pay calls.

Regarding that point, this court in case quoted from, *ubi supra*, decided that the bank, in purchasing the stock and the property mortgaged for its payment, occupied no worse position than any other purchaser as to the unpaid balance in defaulted calls.

A conclusion that could not have been reached if the court had for an instant thought that the only remedy available was as contended by the defendants *in rem*.

It was decided that the ground was not well founded.

We leave the point confirmed in the correctness of the principles announced in the Thompson case.

ACT 100 OF 1847 DOES NOT AS TO CITIZENS BANK LIMIT AMOUNT AND NUMBER OF CALLS.

On the second point, to-wit: That *Act 100 of 1847 contains a contract between the State of Louisiana and the stockholders of the Citizens Bank whereby, on payment of the contributions provided for in that act, all liabilities of the stockholders of the bank on their subscription for stock is discharged;* the decision from which we have already quoted at some length is equally as clear and conclusive.

The court in stating the grounds of the defence states that one of those grounds was based by the defendant on the ruling of the court in the case of Association vs. Lord, 35 An. 425, and held, in passing upon the point urged, that the decisions in the matter of the Consolidated Association of the Planters of Louisiana rested upon the special facts connected with the affairs of that association.

We might conclude, on this point, without further comment, and rely upon the decision in which most of the issues of this case have been decided, were it not that defendants' counsel, with great earnestness and ability, again press that issue, though previously decided.

DIFFERENT RULE PREVAILED BETWEEN CITIZENS BANK AND PLANTERS ASSOCIATION, AS TO CALLS.

Defendants' insistence is that the *Planters Consolidated Association vs. Lord, 35 An. 425, arose under Act No. 100 of 1847. That the Act 100 laid upon the managers and directors of the Consolidated Association the duty of requiring such annual payments as would accumulate a fund sufficient to meet the obligations of the State, just as like obligation is.*

*laid by the same act upon the managers and directors of the Citizens Bank.*

*That the obligation to contribute was imposed by the act in order to accomplish a settlement, and that this could not be accomplished without the consent of the stockholders. That the consent was obtained as required by the act, and it follows that the provisions of the act and the contract thereunder resulting by the submission to the stockholders were just as binding upon the Citizens Bank as upon the Consolidated Association.*

The limit imposed by the statute, within which payment of the amount required from the stockholders was to be made is not the same in the case of the Citizens Bank as in the case of the Consolidated Association of Planters.

It was made the duty of the managers and directors of both corporations to require such annual or periodical payment independently of their stock obligations as would accumulate a sum sufficient to meet the obligations of the stock incurred by the State for account of these banks.

As to the latter only (the Consolidated Association) a division of the calls was ordered to be made in equal instalments not to exceed seventeen years.

The *proviso* containing that limit does not refer to the Citizens Bank.

Under the authority given by statutes the managers and directors of the Citizens Bank met and passed a resolution declaring a call of seven dollars per share, payable in seven years' instalment, to meet the obligation incurred by the State on its account. The managers, in the resolution, gave it as their opinion that these contributions would prove sufficient to meet that obligation.

It was a mere opinion and not binding, particularly in view of the fact that these managers reserved the right, in one of the resolutions, of increasing thereafter the amount of the contribution and of changing the time and mode of payment.

The situation of the two institutions was not the same under the statute, nor was it made the same by the mere opinion of the managers that the call commencing in 1851 would meet the end in view.

The relation, argue counsel for defendants, of Act 141 of 1852 to acts preceding is to strengthen and confirm their position.

They (counsel) direct attention to the fact that in order to supply

the deficiency then existing in the assets of the bank, as well as to form an additional security for the circulation, Act 141 authorized a call to be made upon the stockholders not to exceed twelve dollars per share; and further provided that the act should not take effect until it had been accepted by a majority of the stockholders in number and amount.

They contend further that the contract created under Act No. 100 of 1847 in this way express legislative recognition that it actually attached, was of force and became inviolable; that it could only be modified by the parties thereto. *That when the State in Act 141 authorized a new call for a contribution of twelve dollars per share it must be taken to have said perhaps, but just as effectively as it had said so directly to the stockholders: The right and privileges as originally bestowed on the Citizens Bank shall be restored if you will pay one million six hundred thousand dollars as demanded and upon your waiving the exemption from all further calls for contribution upon the stock secured you by terms of Act No. 100 of 1847. The right to the exemption being vested in you, waiver thereof is indispensable to obtain the advantages proposed.*

We think it sufficient answer to defendant's insistence to call attention to the fact that there was no right of exemption vested in the stockholder by any prior act.

The only act upon the subject was Act 100 of 1847, which contains no limit as to amount of calls and time of payment in so far as relates to the Citizens Bank.

Section 6 of Act 141 of 1852 provided that the act would have effect when accepted by the stockholders. It does not appear that it was accepted by them; it was, therefore, ineffective and has no bearing upon the issues of this case.

The shareholders did not, by neglecting or declining to accept, retain any right to a limit, for no such limit had been provided, as contended, on calls for subscription.

This leads us to the proposition of defendants' counsel, that Act 246 of 1853 had the effect of reviving the bank, and that, taken together with the compact or articles of association between the mortgage stockholders and subscribers to the cash stock, it *presents the modified constitution, or present charter of the Citizens Bank, and that Acts Nos. 106 of 1858, 7 of 1867, 45 of 1873, and 40 of 1874, are without effect, null and void.*

They urge upon our attention that the bank was rehabilitated by the acceptance on the part of the stockholders of the terms of Act of July 26, 1853, No. 240; that the bank was to have two departments, the cash and the stock mortgage *department; that department is significative of division, and that the term presupposes the fictive unity of the bank,* but the distribution of its business into parts, in order to *promote the efficiency of the corporation as a whole.*

*That the proviso of Act 246 of 1853 imposed upon the stockholders for cash the payment of the contribution originally exacted for their subscriptions, and at the same time maintained the mortgage to secure those contributions.*

*That the shareholders were to share in the profits and losses of* the bank in the proportion of the amount of the stock paid in to the amount of the available banking assets of the bank.

*That these stockholders remained joined as stockholders in one and the same bank, consolidated for the common advantage.*

The question relating to the unity of the bank, and the question of prescription, in so far as it affects the case, will be considered by us in passing upon the effect of the agreement of October 8, 1880.

The defendants complain *that the acts subsequent in date to Act 246 of 1853 would release the cash stockholders and uphold partiality as a rule; that it would take from the many to give the few.*

This ground of defence has no support in Act 106 of 1858, having for object, as expressed in the title, to equalize the loan to mortgage stockholders by an extension of the time of payment on five hundred thousand dollars of the State bonds due in 1859. A similar authority in regard to extending all bonds of the State in favor of the bank was given by Act No. 7 of 1867.

But it is urged by counsel in support of the position that payment of the bonds due Hope & Co. having been extended to 1884 without the consent of the stockholders, the bonds are prescribed, and they are discharged.

It is assumed throughout the argument that the stockholders are the debtors of Hope & Co., and not the bank. That they, the stockholders, burdened real property by way of guaranty for the bonds, issued by the State in favor of the bank, and were the debtors.

To this proposition we can not give our assent. The bank, a corporation endowed with the capacity of acquiring legal rights and sub-

ject to legal liabilities, borrowed the amount represented by bonds. This loan was not made to the stockholders, but to the bank.

It is true that the bank transferred all the securities to the State and holders of the bonds as a "species of pledge."

The limited transfer did not constitute the debtors on the securities, the debtors of those from whom the bank borrowed.

In every statute on the subject the bank is referred to as the debtor to those from whom it borrowed amounts secured by bonds. The acts authorizing the bank to extend the payment of the bonds of the State made to its order are of no avail to the debtors of the bank.

## CONTRIBUTIONS OF MORTGAGE STOCKHOLDERS AND CASH STOCKHOLDERS.

In support of their proposition that Act 45 of 1873 relieves the cash stockholders, notwithstanding that they obtained Act 246 of 1853 upon the express condition that they should remain bound with their associates, upon this mortgage stock as originally subscribed, and that it would unjustly enrich the cash stockholders, and that it would uphold partiality as a rule where impartiality was the condition precedent, they direct attention to the statute (45) which reads: " That the directors of the Citizens Bank of Louisiana be and they are hereby authorized and instructed to call on the *mortgage stockholders* for such contributions on their stock as the board may deem necessary to assure the prompt payment of interest on bonds of the State issued in favor of said bank," and have not included the *cash stockholders* as subject to contribution. It is contended by the defendants that, under the terms of Act 246 of 1853, the *cash stockholders of the bank* also owe contribution.

Should we omit consideration of the act of 1873 as being null and void, there are preceding unrepealed acts authorizing calls for contributions.

By the act of 1847, said this court in Citizens Bank vs. Levee Steam Cotton Press, 7 An. 286, it was made the duty of the managers to exact from the stockholders such an annual contribution as would form a fund sufficient to meet regularly the payments due on the bonds of the State.

It can not be reasonably denied that shareholders should be called upon to contribute in respect of their shares, at the same time and in ratable amounts, and that a call should be equal and uniform.

We do not feel at liberty to decide in this case, without a contradictory hearing, that the call is partial.

The cash stockholder has a right to be heard.

Mr. Morawitz, Vol. 1, p. 155 (2d Ed.), in his work on Private Corporations, announces as follows:

" But if some shareholders have already contributed more than others, it would be not only the right but the duty of the directors to make calls upon the other shareholders in such amounts as to equalize the contributions of all."

In the case at bar, it does not appear as exceptional and extraordinary that shareholders who have paid their shares in full are not called upon to pay contributions equal in amount to that required of stockholders who have not paid their shares.

We will not commit the court to the conclusion that shareholders who have paid can be called upon to pay other " calls " without a hearing from the alleged delinquents.

The defendants are not without a remedy.   Morawitz, Vol. 1, p. 281.

### ALLEGED DISCHARGE OF SHAREHOLDERS.

We pass to the next ground of defence.

The defendants contend that October 8, 1880, Hope & Co. entered into a written agreement of record wherein they discharged the Citizens Bank from liability to the bondholders on the bonds issued in aid of the bank; *that the mortgage stockholders being securities for the bonds, in behalf of the bank, the discharge of the plaintiff bank as principal discharged them as securities.*

We have seen that it was held in Citizens Bank vs. Levee Steam Cotton Press that the securities were transferred " as a species of pledge."

They were transferred by the Citizens Bank.

The shareholders by whom these securities are due are the original debtors to the bank.

They can not ignore the bank, their creditor, in order to improve their defence against the creditors of the bank.   If there was a discharge it was given to the State, to the Citizens Bank, and not to the debtors of the latter, who must be held bound just as if its indebtedness had never been transferred in pledge.

In James vs. Pike, Lapeyre & Bro., 23 An. 477, the distinction is drawn between a contract of suretyship and a contract of pledge—

the first is where a person is given to secure a debt, and the second, the pledge, is where a thing is given to secure the debt.

The thing, the security secured by mortgage in favor of the bank, was given in pledge under the terms of the statute, and no person became bound as guarantee.

The extension complained of did not release the shareholders from their obligation and did not change their relation to their debtor.

Having reached the conclusion just expressed it disposes of the ground following:

That Hope & Co., having for themselves and other bondholders tendered, in conformity with the *Funding Act No. 3 of 1874, the bonds of the State of Louisiana issued in aid of the Citizens Bank, and the State Board of Liquidation, having been ordered by a final judgment of the Supreme Court to fund the bonds, and the board having acted under the judgment, the bonds are thereby extinguished by payment and satisfaction and the mortgage stockholders in their capacities as sureties discharged.*

We have determined that these defendants are debtors as holders of stock mortgages in pledge and that they are not guarantors.

That securities were pledged and no person was given as guarantor to secure a debt.

These securities were the property of the bank at the time they were pledged and when the agreement complained of was made.

If there was a discharge it did not enure to the benefit of the original and principal debtor.

### PLEA OF PRESCRIPTION.

With reference to defendants' plea of prescription of the bonds held by one of the plaintiffs, it can not be sustained consistently with our views previously expressed. If all these bonds were prescribed it would not discharge the defendants from liability to their creditor, the bank.

On the plea of prescription of the calls for contribution, the defendants argue that the prescription of five years apply.

That issue effects them directly, and if prescribed, they would have the right to a decree sustaining the plea.

We therefore must pass upon it as being an issue of the case.

This court in Citizens Bank vs. Hyams, 42 An. 733, decided that calls for contribution are subject to the prescription of ten years

36

from the date of the call, and cited Art. 3544 of the Civil Code applying, it being a personal action not excepted by the Code from that prescription—that is, not being included in the number of personal actions as not subject to that prescription.

We can conceive of no good reason that would justify us in overruling that decision.

### IMPROVEMENTS MADE ON THE PROPERTY MORTGAGED.

The ground is argued by defendants that the late Edward J. Gay, from whom his heirs derive their interest, never was a stockholder; that the defendants are entitled to be reimbursed the value of improvements placed on the plantation in good faith by him.

He was not a stockholder holding directly from the bank, but when he bought the property under seizure, and the bank stock attached, he thereby assumed the responsibility and obligations of a stockholder, and is not entitled to improvements. The mortgage affects the movable attached to the plantation.

### PROCEEDINGS VIA EXECUTIVA NOT CHANGED TO VIA ORDINARIA.

Finally, the defendants contend that the plaintiff bank, having, by their acts and pleadings, converted their proceeding from *via executiva* into *via ordinaria*, that their petition for order of seizure and sale must be dismissed with costs.

The plaintiff filed an answer ·to the petition of injunction setting forth its defence, but did not pray that it have judgment for the amount claimed in the petition for the order of seizure.

A creditor who has sued out an order of seizure does not change the proceedings from the *via executiva* to the *ordinaria* when he does not pray for a judgment against his debtor, who has enjoined his order of seizure.

The petition for the injunction should be considered an answer to the original suit, and there is no necessity of filing· an answer. Rowlett vs. Shepherd, 4 La. 90; Cox vs. Rees, 16 La. 109; Conrad vs. LeBlanc, 29 An. 124.

It does not follow, if an answer is filed setting forth the grounds of defence to the injunction without prayer for judgment, that the proceedings are changed to the *via ordinaria*.

This ends our examination of the many points involved.

It is evident that counsel have closely studied their case; the

ingenuity of the argument has not convinced us that those who have assumed the obligation of stockholders do not, on the grounds argued, owe the amount of their subscription.

Judgment affirmed at appellant's costs.

Rehearing refused.