On Application eor Rehearing.
Nicholls, C. J.
The Lane & Bodley Company obtained judgment in she District Court of Caddo parish against H. S. Mathews for six thousand one hundred and twenty-five dollars, with recognition *1286 that said amount was secured as to payment by special mortgage and vendor’s privilege on certain described property situated in Webster parish, and ordering that said property be seized and sold to satisfy the judgment.
The judgment creditors obtained from the Caddo court a writ of fi. fa. in execution of this judgment, directed to the sheriff of Webster parish, in which he was ordered not only to make a general seizure of the rights and property of the defendant, but especially to seize the property which had been described in the judgment as that which was subject to the mortgage.
The sheriff of Webster parish under the writ of fi. fa. made a seizure of property. The Lake Bisteneau Lumber Company filed a petition in the District Court of Webster parish, in which they alleged that Mimms, sheriff of that parish, had illegally trespassed upon their property, and had illegally seized and advertised -for sale the steam saw-mill, engines, boilers, improvements, buildings and fixtures, worth over forty thousand dollars, to satisfy an alleged debt of not over seven thousand dollars, alleged due by Mathews to the Lane & Bodley Company on a fi. fa. issued out of the District Court for Caddo parish, and had advertised to sell their property on a judgment debt alleged, in which and to which they were not made parties. That their property was not subject to seizure and sale in said suit and under said fi. fa.; that they had demanded of the sheriff a release of their property, but he had refused to make such release, and was proceeding to sell the same in connection with the S. 54 of the N. E. 54 of the N. E. 54 of the N. E. 54 of Sec. 7, T. 17, R. 9, in Webster parish.
Plaintiffs averred that their property so seized formed no part of the land described in the act of mortgage, but was property .purchased, and owned, and occupied by them for over three years, and by its acquisition by trade and purchase, and by acquisition by prescription perfecting title therein in them; that they were the sole owners of said property seized, and had joined it to other machinery and imbedded same as a whole in the land and soil owned and occupied by them in Sec. 7, T. 17, R. 9, and then formed part of other lands owned by them, different from the lands on which the seizing creditors alleged a mortgage. That petitioners’ said property, by use and destination, and by being put on, imbedded in, fastened to and set down on brick and mortar, and fastened to by them and by *1287 their consent, had become and were immovables, both by destination and by forming part of the soil, and by use and connection with the soil and other machinery and indivisible, and not subject to being taken apart and used without damage or destruction of the whole as a unit and unfitting same for use. They prayed for .and obtained an injunction, directed against the sheriff, prohibiting him from making the sale of the property, and that there be judgment decreeing petitioners to be the owners of the property. Plaintiffs, in injunction, did not attempt to make the judgment seizing creditors, the Lane & Bodley Company, parties defendant to the injunction proceedings.
The Lane & Bodley Company, by leave of court, made themselves parties to .said proceedings by what they designated an “ intervention and third opposition,” alleging in their pleadings that they were the real parties in interest. In these' pleadings they proceeded to “ answer” the petition for injunction. After denying all its allegations, they admitted the seizure made by the sheriff, but alleged that the same was proper and legal. They averred that they had a mortgage on the lands, building and machinery, and a vendor’s privilege on the machinery, which had been seized and which had been recognized in the judgment rendered by the District Court for Caddo, in execution of which the seizure had been made under a writ of fieri facias. That the land upon which the mill property stands with all the machinery was purchased by Mathews from W. S. Wadley after the buildings and machinery had been placed thereon, and it was the intention of Wadley to sell and Mathews to purchase the lands upon which the said buildings and improvements then stood, for the express’purpose, on the part of Mathews, to mortgage the said land, buildings and all machinery thereon to the Lane & Bodley Company. That the description in said deed of sale was a mere clerical error on the part of the purchaser and seller, and the surveyor to whom they applied for a description of the land; that it was described as the S. H of N. E. 34 of N. E. 34 of N. E. 34 of Sec. 7, T.-17, R. 9 of Webster parish, when it should have been described as so much of S. 34 of N. E. 34 of N. E. 34 of Sec. 7, T. 17, R. 9 upon which the saw-mill buildings and machinery of said Mathews then stood, which deed to Mathews was duly recorded July 29, 1891, and on the 1st day of July following Mathews executed his mortgage to the Lane & Bodley Company for nine thousand- six hundred and thirty-one dollars, in *1288 which mortgage it was expressly stated that the mill machinery was then on said land, thereby designating what lands were described and intended. They averred that on January 16, 1898, Mathews sold the identical lands to the plaintiffs in injunction, and described in the deed to Mathews, and stating that it was the same property upon which the mill building and machinery then stood, and that the plaintiffs in injunction were thereby estopped from denying that said machinery and buildings were upon said land purchased from Wadley; that plaintiffs in injunction had recognized the rights of the Lane & Bodley Company under their mortgage by paying a portion thereof. They prayed that Goodwill, president of the Lake Bisteneau Lumber Company, be cited to answer and served with a copy of their petition; that on final hearing the writ of injunction be dissolved with damages, and that the land upon which the mill, machinery and buildings of plaintiffs then stood be decreed to be the land sold by Wadley to Mathews, and by Mathews to the Lane & Bodley Company, and subject to the mortgage and vendor’s rights of the latter company, and that the sheriff be ordered to proceed with the sale, and that the description given in said deed was a mere clerical error, and not the intention of the parties, and that the Lane & Bodley Company have judgment against the plaintiffs in injunction and the surety on the injunction bond in the sum of five hundred dollars.
The Lake Bisteneau Lumber Company appeared and by counsel moved to dismiss the intervention of the Lane & Bodley Company on the ground that it would retard the trial of the issues presented in the main suit, and for the reason that it was apparent on the face of the papers that the intervenors disclosed no cause of action and did not present before the court the proper parties for an action to ^correct the description to the property; that, therefore, for want of proper parties and a cause of action the intervention should be dismissed.
This motion or exception appears to have been overruled.
The sheriff answered that he had no interese in the suit except in his official capacity.; that he was proceeding in all respects in a legal manner, and he prayed that the writ of injunction be dissolved and the suit dismissed.
On November 27, 1895, the attorneys of record of the Lake Biste-neau Lumber Company suggested to the court that that corporation had been dissolved, and that that cause could not be heard or any action taken thereon for want of parties.
*1289 The Lane & Bodley Company then moved that Andrews, Walters and Gearhart, receivers of the corporation, be made parties and duly cited. It was ordered accordingly. Citation was made upon Walters; Gearhart and Andrews were not cited, the sheriff stating, that they could not be found.
In September, 1896, Walters, receiver, appearing in court by counsel, alleged that intervenors (the Lane & Bodley Company) had no right to appear in that court to take further action in the cause; that the District Oourt was without jurisdiction in the matter, as the' pending receivership of the affairs of the Lake Bisteneau Lumber-Company, Limited, in the United States Circuit Oourt of the Western District of Louisiana, holding sessions at Shreveport, had operated a suspension of the District Court’s actioD in the cause, and as no permission to sue had been granted by the court which had appointed the receivers. Appearer, as one of the receivers of the said company, moved and prayed to be dismissed, and for all orders necessary and for general relief.
This motion having gone to trial the District Oourt on the 9th of October, 1896, rendered judgment in the following words:
“ In this cause by reason of the law and the evidence on the tria* of the motion to dismiss this suit, because the court is without jurisdiction: It is ordered, adjudged and decreed that the suit be dismissed and for costs.”
On the same day, the Lane & Bodley Company, interpreting this judgment as one prejudicial to themselves, made a motion for a new trial, assigning as a reason: “ That the judgment of the court dismissing this action is contrary to the law and the evidence.” This motion appears to have been overruled, and they then applied for and obtained an order for a suspensive or devolutive appeal. This appeal they never perfected by giving bond.
In November, 1896, Goodwill, who was surety on the injunction bond of the Lake Bisteneau Lumber Company, applied by petition for appeal from the judgment. In this petition he averred that the Lane & Bodley Company had proceeded to the sale of the property enjoined, had acquiesced in the judgment and abandoned their appeal.
He was granted a devolutive appeal and gave bond as required.
On the 19th of November, 1896, the three receiver’s of the Labe. *1290 Bisteneau Lumber Company applied for and obtained an order for a devolutive appeal, which appeal they perfected by giving bond.
In their petition for the appeal, they averred that the judgment rendered was signed in error by the judge of the court, and it was contrary to the law and the evidence.
Two transcripts were filed in this court and two appeals were •docketed under the same title, but different numbers, one being No. 12,367, the other No. 12,368.
The Lane & Bodley Company are before the court simply as appel-lees who have asked no amendment of the judgment.
This court annulled and reversed the judgment appealed from, •ordered that the case be reinstated on the docket as it existed before the judgment to be proceeded with in due course of law and decreed •that appellants pay costs of appeal. The latter having asked and •■obtained a rehearing, the case was submitted on briefs.
Appellants say “ they made no motion in the lower court to dismiss the suit. The motion made and sustained was on an exception interposed by one of the receivers (Walters) averring that the Lane & Bodley Company, intervenors, had no right to compel his appearance in the lower court, and his prayer was that he be dismissed, that is that he be relieved from the necessity of appearing in the cause in that court. On the trial of that motion no judgment could be rendered dismissing anything or anybody except the receiver, Walters * * *
“The judgment appealed from dismisses the suit of the plaintiffs. It is clear that no such judgment could be rightfully rendered on the .pleadings in the cause. If appellants be successful in this court they should not be burdened with costs made necessary by the fault •of the appellees or by a decree erroneous to their prejudice. In the •opinion read some propositions are announced which are not only ■unnecessary to the decision of the question before the court, but are also, we submit, with due deference, not applicable to the ease at bar.”
The confusion which has arisen in this case has been due in part to the fact that the seizure made in the matter of the suit of the Lane • & Bodley Company against Mathews was not made in the parish of ■Oaddo, where the judgment was obtained, but by the sheriff of the parish of Webster, where the land seized was situated — to the further Tact that the petition for the injunction which issued was addressed *1291 to the District Oourt of Webster instead of Caddo; that the sheriff of Webster parish was alone made the defendant in injunction; that the suit was docketed in Webster parish as that of the Lake Bisteneau Lumber Company vs. J. B. Mimms, Sheriff, and that the Lane & Bodley Company, when they went into the case, styled themselves intervenors and third opponents, asked for citation upon the Lake Bisteneau Lumber Company and prayed for a decree apparently as upon a reeonventional demand for the reformation of the the contract of mortgage.
Had the Lake Bisteneau Lumber Company made the Lane & Bod-ley Company parties to their injunction proceedings as they should have done, we do not think that the position of the latter corporation in the case would have been misunderstood. They would have obviously occupied that of defendants in the injunction proceeding, brought as such into court by the Lake Bisteneau Lumber Company themselves. That is now and has been all the time their status in the injunction proceedings. When left out and ignored by the plaintiff in injunction, that which they did was simply to make themselves parties defendant therein. What is styled an intervention and a third opposition on the part of the Lane & Bodley Company, is nothing more than an answer on their part. The prayer for citation on the plaintiffs in injunction was simply to bring home notice to the latter that the seizing creditor had, with leave of court, become parties defendant, and to advise them of the allegations and defences which they made. The Lake Bisteneau Lumber Company was not brought into court at the solicitation of the Lane & Bodley Company as defendants; it was they, themselves, who went into court as plaintiffs, directing an attack against the proceedings pending in court in the suit of the Lane & Bodley- Company against Mathews. The latter corporation’s position was not aggressive, but purely defensive. If the allegations of their answer be sustained by proof (as to which we express no opinion), there would he no necessity for a reformation of the contract of mortgage — the deed of mortgage would stand good without any special decree. Appellants have fallen into the error of supposing that the appellees are plaintiffs in proceedings in which they, themselves, are sought to be made defendants therein.
The decree which appellees asked for in their answer was simply that which would, of necessity, have really to be given if appellees’ *1292 defensive position should be sustained, even though it might Dot be given in direct terms. The special prayer inserted in the answer could be stricken out in the ease as surplusage, as the court’s judgment (if for appellees) would, without it, cover all the issues raised in the injunction.
Had the seizure been made in Caddo, and had the injunction c issued from the District Court of that parish, we think plaintiffs would have realized that the injunction which they took out was a mere incidental or adjunct proceeding engrafted by them upon the suit of the Lane & Bodley Company, no matter under what title the proceedings might have been docketed (Rowlett vs. Shepherd, 4 La. 90, and Johnston vs. Hickey, 4 La. 293), and that a person can not go into a court as a plaintiff and then question the right on the part of the defendant, or of one who was legally entitled tO' be the defendant, to make a defense in the case. The sheriff had no' interest in the subject matter of the ownership of the property seized and was without authority to stand in judgment to test the issues which plaintiff sought to raise contradictorily with him. We do not understand appellee to have advanced a reconventional demand against appellants in any legal sense of the word. The facts of the case are simply these: The Lane & Bodley Company, holders of a claim against Mathews secured by a special mortgage and vendor’s privilege, with the clause de non alienando, on certain property described in the act of mortgage, obtained a judgment against Mathews with a recognition of his mortgage and privilege. In execution of this judgment certain property was, under a writ of fi.fa., seized as belonging to the judgment debtor. Independently of any question as to the legality and rightfulness of the seizure, the existence, as a fact, of the seizure itself is undisputed. That fact carried the property seized as a legal result into the custody of the executive officer of the State court, and, therefore, under that court’s jurisdiction until legally disposed of. After that seizure had been made the Lake Bisteneau Lumber Company went into the State court as a party to the pending proceedings, raising issues which that court and none other could decide. That company could not, whether subsequently it went into insolvency or into the hands of receivers or not, oust the State court from its acquired jurisdiction. Appellants say that the property in question belonged to them; that under the laws touching receiverships all property so belonging *1293 is thrown into the possession and under the control of the court where the receivership is opened, and that all proceedings touching that property are stayed, and all issues touching it have to be disposed of by the court of the receivership. That proposition is stated entirely too broadly. The property involved in this litigation unquestionably belongs to the Lake Bisteneau Lumber Company. We think that fact is conceded on both sides; but if it be the same property which was mortgaged to the Lane & Bodley Company (as that company asserts to be the fact) it went into their ownership encumbered wich a mortgage which carried with it the clause de non alienando. Under such circumstances the mortgagees were authorized to pursue the property as if still belonging to the mortgagor. This they did before the receivership was opened in the State court and there they were attacked in their proceedings by the claims and pretensions of the Lake Bisteneau Lumber Company. It is too clear for argument that the seizing creditors under their seizure can not be forcedly referred to "the Circuit Court of the United States for the adjudication of their rights by reason of the fact that subsequently to the seizure plaintiffs in injunction, already in the State court, went into the hands of receivers. They went, as opponents to a seizure, into proceedings pending in the State court and raised issues therein. They must take the case and the jurisdiction as they found it and remain in the court having custody of the property until the issues raised are decided. We are satisfied that it was not the intention of the receiver, in asking to be dismissed, that the injunction should be discontinued or dismissed. We are satisfied that his whole object was to except to the right of the appellees to cite him into the State court .as receiver, or to do so without the consent of the United States court, upon what he imagined was a new and independent proceeding which the Lane & Bodley Company was seeking to institute. We are of the opinion that under the circumstances of this case, the right of citation was not dependent upon the consent of the Circuit Court. Appellees could not be kept in court indefinitely for want of a continuing plaintiff in injunction; they had the right to make proper parties and to have the injunction dismissed, if, after proper proceedings, the parties cited did not choose to litigate in that jurisdiction.
We are of the opinion that the exception of Walters, the receiver, .should have been overruled and the cause left to have taken its reg *1294 ular course. There was error in dismissing the injunction proceedings.
We see no reason to change our judgment as to costs of' appeal and throw them upon appellees as is suggested. Appellees moved unsuccessfully for a new trial. It may be that they did so for wrong reasons and upon á construction of the judgment different from that which they subsequently reached — none the less they sought, without, avail, to have the judgment as rendered set aside as contrary to the law and the evidence. Had their application been granted, this appeal would not be before us. On the other band appellees made no effort whatever to correct a judgment which was manifestly erroneous and to their prejudice as rendered. They misconstrued its scope until too late to have the same rectified below as they could have done, and in their own interests they have forced an appeal to save themselves from the error into which they have fallen. Had the judgment been such as they understood it to be, and on which fact they rested, it would have been clearly wrong. (Oteri vs. Oteri, 37 An. 76.)
The judgment heretofore rendered in this case must remain undisturbed, it being, in our opinion, correct.
Blanchard, J., takes no part in the decision of this case, not having been a member of the court when the case was argued.