(81 South. 259)

No. 23104.

DE BRUEYS v. BURNS et al.

(June 29, 1918. On the Merits, Jan. 6, 1919. On Application for Rehearing, March 11, 1919.)

*(Syllabus by Editorial Staff.)*

1. COURTS ☞487(8) — TRANSFER OF CAUSE — FILING TRANSCRIPT OF APPEAL—TIME.

On appeal from district court to Court of Appeal, and transfer by that court to Supreme Court, with documents received from district court, where transcript forwarded by clerk of district court certified that delay was not due to appellants' laches or fault, the appeal would not be dismissed because of a delay in forwarding transcript, though Court of Appeal should have limited time for filing transcript.

2. COURTS ☞487(1)—TRANSFER OF CAUSE— AFFIDAVIT OF MERITS—STATUTES.

Under Act No. 56 of 1904, requiring affidavits that appeal to Court of Appeal was not taken merely for delay, omitted from amending and re-enacting statute (Act No. 19 of 1912), there was no necessity for Court of Appeal to require appellant to make such an affidavit as condition precedent to transfer of appeal to Supreme Court.

3. COURTS ☞224(3)—SUPREME COURT—JURISDICTION—RECONVENTIONAL DEMAND.

In suit to enjoin executory proceedings on a note, secured by mortgage and a vendor's lien, and for an accounting and damages against vendor, plaintiff's demands were not in reconvention, so as to give the Court of Appeal, having jurisdiction of main case under Const. art. 95, jurisdiction of whole case, where vendor was not a party to executory proceeding.

On the Merits.

4. EVIDENCE ☞368(12) — SUBPŒNA DUCES TECUM—CONFESSION.

In such suit, plaintiff's single averment that he could prove by books and records in vendor's possession, sought by a writ of subpœna duces tecum, that vendor had sold lots as plaintiff's agent and collected sufficient to satisfy plaintiff's debts and leave him indebted to plaintiff, was only allegation which court should have taken as confessed by vendor, if evidence that it was impossible to produce books, etc., was not satisfactory, in view of Code Prac. art. 140.

5. APPEAL AND ERROR ☞871 — INTERLOCUTORY ORDER—NECESSITY OF APPEAL.

In such suit, where minute entry recited that, on traverse of vendor's answer to writ of subpœna duces tecum, the rule was made absolute, ordering that, on the trial, plaintiff should get title to property on proof that it had been paid for, and assigning case for trial, it was not necessary for vendor to appeal to reserve his rights until a final judgment against him.

Monroe, C. J., dissenting.

On Application for Rehearing.

6. PRINCIPAL AND AGENT ☞78(1)—MANDATE —SALE OF PROPERTY—ORAL AUTHORITY— RATIFICATION.

An owner of real property may ratify sales made by an unauthorized agent, or one acting under verbal authority, and then claim of such person or agent an accounting.

7. PRINCIPAL AND AGENT ☞78(5)—MANDATE —ACCOUNTING BY AGENT—ORAL EVIDENCE.

Where unauthorized agent, or one acting under verbal authority, made sales for owner of realty, the oral evidence as to authority, etc., was admissible, not to prove title to realty, or to show a procuration for that purpose, but for purpose of accounting by alleged agent for funds received on owner's account.

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; Prentiss B. Carter, Judge.

Suit by William E. De Brueys against Albert S. Burns, W. B. Lancaster, and another, for an injunction and for an accounting and damages against defendant Lancaster.

Judgment against defendant Lancaster, and against all defendants perpetuating a writ of injunction, and defendants Burns and Lancaster appealed to the Court of Appeal, which ordered the appeal transferred to the Supreme Court. Reversed, writ of injunction dissolved, and case remanded.

Dart, Kernan & Dart, of New Orleans, Miller & Burns, of Covington, John Wagner, of New Orleans, and T. M. Burns, of Covington, for appellants.

Harvey E. Ellis, of Covington, and George Montgomery, George B. Smart, and M. R. Neuhauser, all of New Orleans, for appellee.

On Motion to Dismiss Appeal and on Motion to Transfer Case to Court of Appeal.

O'NIELL, J. Albert S. Burns instituted executory proceedings on a promissory note signed by William S. De Brueys, for $400, less a credit of $300, secured by a mortgage and vendor's lien on certain property bought by De Brueys from one W. B. Lancaster. The property was seized and advertised for sale to satisfy the balance due on the note. De Brueys then instituted the present suit against Burns, Lancaster, and the sheriff, and obtained a writ of injunction, without bond, preventing the sale, on the allegation that the debt had been paid and extinguished. He had bought the property from Lancaster for $4,100, paying $100 in cash and giving his ten promissory notes for $400 each, for the purchase price; the note foreclosed on by Burns being one of the ten. He alleged that he had intended to sell off the land in lots and apply the proceeds to the payment of the mortgage notes held by Lancaster; that subsequently he had entered into a verbal agreement with Lancaster that the latter would take charge of the sale of the lots as his (De Brueys') agent, for a commission of 10 per cent., and apply the net proceeds to the payment of the debt due Lancaster; that the latter had, according to the alleged agreement, sold more than 400 lots, at prices ranging from $36 to $48 each, and had thereby collected more than was due him. He alleged that he did not know how much Lancaster had realized from the sales, as the latter would not render him an account; that Lancaster was yet the owner of the note foreclosed upon, Burns being only interposed as plaintiff in the executory proceedings to shield Lancaster; and that, if Burns had, as he had alleged, acquired the note from Lancaster, it was after maturity and with full knowledge that the debt had been extinguished. Plaintiff alleged, finally, that Lancaster had, by violating his verbal agreement regarding the sale of the lots, by threatening plaintiff with criminal prosecution to coerce him into making a retrocession of the property, by refusing to render an account and cancel the notes, and by the attempt to foreclose on a note that had been paid, caused damages to plaintiff in the sum of $15,000, for humiliation, embarrassment, and injury to his credit and reputation, etc.

The prayer of the petition was for a judgment against the three defendants, perpetuating the writ of injunction and ordering the mortgage and vendor's lien canceled, and the note returned to plaintiff, and for an accounting by Lancaster and a judgment against him for whatever sum might be shown to be due plaintiff, in addition to the $15,000 damages.

The plaintiff in the injunction suit, alleging that Lancaster had in his possession certain books, records and documents, that would show an indebtedness due by Lancaster to plaintiff, for sales of lots, far in excess of the mortgage debt due by plaintiff, obtained a writ of subpœna duces tecum, ordering Lancaster to produce the books, records and documents. Lancaster answered under oath that he had no such books, records or documents. On the traverse of his answer, judgment was rendered against Lan-

caster, ordering the cancellation of all of the mortgage notes and condemning him to pay plaintiff an excess of $13,458.40, with legal interest from judicial demand. Judgment was also rendered against the three defendants, perpetuating the writ of injunction. A judgment of nonsuit was rendered on plaintiff's demand against Lancaster for $15,000 damages.

The defendants Burns and Lancaster prosecuted an appeal to the Court of Appeal. The judges of that court, finding that the amount in contest exceeded $2,000, exclusive of interest, on their own motion, ordered the appeal transferred to this court. The clerk of the Court of Appeal sent up, in lieu of a transcript of appeal to this court, the original documents that had been sent from the district court to the Court of Appeal. No transcript being required by law for the appeal to the court of appeal, none had been made. The clerk of the Supreme Court returned the original documents to the clerk of the district court, with instructions to send up a transcript of appeal. No return day, or time limit for filing the record in the Supreme Court, had been fixed in the order of the Court of Appeal transferring the case to the Supreme Court, and no return day or time limit was fixed in the order of the Supreme Court directing the clerk of the district court to send up a transcript of appeal.

The plaintiff, appellee, moved for a dismissal of the appeal, on the grounds: First, that there was an unreasonable delay in filing the transcript, the delay being more than four months from the date of the order directing the clerk of the district court to make and send up the transcript; second, that the appellants did not declare on oath that their appeal to the Court of Appeal was not taken for the purpose of delay, as was required by the Act No. 56 of 1904, as a condition precedent to the transfer of an appeal; and, third, that the transcript was incomplete, in that it did not contain certain depositions that were introduced in evidence.

The appellants moved to have the case sent back to the Court of Appeal, on the theory that the demands of the plaintiff in the injunction suit were reconventional demands, or incidental demands, urged in answer to the executory proceedings. They invoke the provisions of article 95 of the Constitution, that, in all cases where there is an appeal from a judgment rendered on a reconventional demand or other incidental demand, the appeal shall lie to the court having jurisdiction of the main demand.

### Opinion.

[1] No provision has been made by the Legislature for the fixing of the return day, or time limit within which to file the transcript of an appeal that is transferred by the Court of Appeal to the Supreme Court. The original statute authorizing the transfer of an appeal, Act No. 56 of 1904, p. 135, and the Act No. 19 of 1912, p. 25, amending and reenacting the first statute, both declare merely that the judges of either court shall regulate the costs incurred by the appellant and the proceedings to be had in such cases.

The clerk of the district court, who made and forwarded the transcript of appeal to this court, certified on oath that the delay was not due to any fault or laches on the part of the appellants, but was due to his inability to procure from the clerk of the Court of Appeal a copy of the order of that court transferring the case.

There would be no justice in making the appellants suffer a dismissal of their appeal because of a delay, for which they were not at all responsible, in the filing of the transcript of appeal. The law requires the district courts, in fixing the return day of an appeal to the Supreme Court, to allow not less than 15 nor more than 60 days. But that has no application to the transfer of a case

by the Court of Appeal to the Supreme Court. If we assume that the Court of Appeal might or should have fixed the return day or limited the time for filing the transcript in the Supreme Court, the appellants should not suffer for the court's omission in that respect.

[2] The contention that appellants should have made an affidavit that their appeal to the Court of Appeal was not taken merely for delay is founded upon a requirement of the Act No. 56 of 1904, which was omitted from the amending and re-enacting statute, the Act No. 19 of 1912. The latter statute does not require such affidavit on the part of an appellant as a condition precedent to the transfer of an appeal. Although that act is, in form, an independent statute, and contains no repealing clause, it is, as its title declares, an amendment and a complete re-enactment of the Act No. 56 of 1904. The act of 1904, therefore, was retained in force only as amended and re-enacted, and the provision that was omitted from the re-enactment must be considered repealed. See Flournoy, Tax Collector, v. Walker, 126 La. 489, 52 South. 673, and State ex rel. Brittain, Tax Collector, v. Hayes, 143 La. 39, 78 South. 143. There was, therefore, no necessity for the Court of Appeal to require the appellants to make an affidavit that their appeal was not taken for delay, as a condition precedent to the transfer of the appeal.

The clerk of the district court has, since the motion was filed to dismiss the appeal, sent up a supplemental transcript containing the depositions that were omitted from the original transcript.

The motion to dismiss the appeal is therefore overruled.

[3] The appellants' contention that the demands of the plaintiff in this suit are only reconventional demands or incidental demands in the executory proceedings, and that the Court of Appeal therefore has jurisdiction of the case, is not well founded. The judgment against Lancaster for $13,458.40 cannot be regarded as having been rendered on a reconventional demand against him, because he was not a party to the executory proceedings against the plaintiff in this suit. Of the three defendants in this suit, he is the only one who has an interest in the controversy, according to the allegations of the plaintiff's petition.

In Koch v. Godchaux, 46 La. Ann. 1382, 16 South. 181, cited by appellant, the defendant in the executory proceedings, availing himself of articles 738, 739 and 740 of the Code of Practice, obtained an injunction by way of opposition to the original proceedings. It is true he alleged that the plaintiff was only an agent of the original mortgagee, and asked for a judgment against the alleged agent as such; but he did not make the original mortgagee a party to the suit, and it was held that, under the circumstances, the only matter in dispute was the right of the original plaintiff to proceed with the foreclosure of his mortgage notes, the amount of which determined the jurisdiction of the court.

The other decisions relied upon to sustain the contention that the demands of the plaintiff in this suit against Lancaster are only reconventional demands are also inapplicable. In Rowlett v. Shepherd, 4 La. 86, for example, the ruling was merely that the plaintiff in a foreclosure proceeding via executiva, against whom an injunction was obtained without bond, on one or some of the grounds enumerated in article 739 of the Code of Practice, could compel the defendant to prove summarily the truth of his allegations, even though the latter had obtained the writ of injunction in a separate suit, instead of by opposition to the executory proceedings. In Hozey, Sheriff, v. McDougall et al., 15 La. 353, the defendant in the executory proceedings obtained a rule on the plaintiff to show

cause why the order of seizure and sale should not be set aside, for the causes alleged, but he did not obtain an injunction. It was held merely that the court had no authority, in such a proceeding, to adjudge how the proceeds of the sale should be distributed among parties not before the court. In McMillen v. McKeroll et al., 19 La. 372, the ruling was merely that, when the plaintiff in executory proceedings, in answer to an ordinary injunction suit by the debtor, prayed for a judgment for a sum of money, he thereby converted the proceeding via executiva into a proceeding via ordinaria. And so was the ruling in Brooks v. Walker, 3 La. Ann. 150, and in Conrad v. Le Blanc, 29 La. Ann. 123. The questions decided in Berens v. Executors of Boutte, 31 La. Ann. 112, are so utterly irrelevant to the question under discussion that we assume the case was cited unintentionally or in error of its contents. There is no merit in appellants' motion to have the case sent back to the Court of Appeal.

The motion to dismiss the appeal and the motion to have the case sent back to the Court of Appeal are both overruled.

### On the Merits.

[4] The only allegation that the plaintiff averred he could prove by the books and records alleged to be in Lancaster's possession, in the petition for a writ of subpœna duces tecum, was that Lancaster had sold lots in the Chinchuba property and collected for the sales a sum sufficient to satisfy the debt due by plaintiff and leave Lancaster indebted to him. That allegation is all that the court should or could have taken as confessed by Lancaster, if the evidence that it was not possible for him to produce the books and records called for was not satisfactory. See article 140 of the Code of Practice.

[5] The minutes of the proceedings had on the 14th of March, 1917, the day judgment was rendered, taking the allegation pro confesso, show that the judge did not consider his decree anything more than an interlocutory judgment, entitled only to such effect as article 140 of the Code of Practice gave it; i. e., the effect of proof of the allegation that Lancaster had collected for lots he had sold from the Chinchuba land more than enough to satisfy the debt due by plaintiff. The minute entry, which was introduced in evidence on the final trial of this suit, recites that on a traverse of the answer to the writ of subpœna duces tecum, the rule was made absolute, ordering that, on trial of this case, De Brueys should get title to the property on due proof that the same had been paid for, and that the case was assigned for trial, by consent of counsel, for the third day of the April term.

Under those circumstances, it was not necessary for Lancaster to take an appeal, to reserve his rights, until a final judgment was rendered against him.

Before the judgment was rendered, taking pro confesso the allegation sought to be proven by the alleged books and records, Lancaster filed, and the judge overruled, an exception of no cause of action. In overruling the exception, the judge reserved to Lancaster "the right to object to any evidence touching that point on the trial of the case." We assume that the point referred to was that the plaintiff's suit was founded upon the allegation that he had given Lancaster a verbal procuration to sell his (plaintiff's) property; whereas a procuration to sell real estate must be evidenced by writing. The defendants promptly urged the objection again, to any evidence whatever, when the plaintiff attempted to prove his case. And the objection was then improperly overruled, on the ground that it referred to the effect of the evidence.

There is no proof, however, even of a verbal contract for the sale of the lots. On the

trial of the case on its merits, the plaintiff only offered in evidence the pleadings in this suit, the petition and order for the subpœna duces tecum, the proceedings had and evidence taken (pertaining only to the question whether plaintiff had the books and records referred to) on trial of the rule to traverse Lancaster's answer to the writ, the judgment and the minute entry showing that the rule was made absolute.

The objection urged to all of that evidence was that the plaintiff's suit could not be maintained on an alleged verbal contract for the sale of his real estate. And the objection should have been sustained. The only document offered in evidence, however, that proved anything, was the judgment taking for confessed the allegation that Lancaster had sold lots from the Chinchuba property and had collected therefor more than the amount due him for the land he had sold to plaintiff. That did not prove that Lancaster had sold lots belonging to the plaintiff, under a verbal procuration; for that seems practically and legally impossible. Besides, the record discloses that Lancaster owned Cinchuba property adjacent to the tract he had sold to plaintiff and was selling lots of his own.

Regardless of the exception of no cause of action, and the objection to the admissibility of proof under the pleadings, our opinion is that the evidence does not sustain the plaintiff's demand. Lancaster denied that he had made a verbal agreement to sell the land as plaintiff's agent, and plaintiff did not contradict the statement. On the contrary, plaintiff proposed to Lancaster, in a letter dated January 11, 1916, that he (plaintiff) would retrocede the unsold land to Lancaster and make arrangements to pay for what he had already sold. It appears, too, that Lancaster accepted the proposition and that the plaintiff afterwards refused to carry it out. If Lancaster did, as plaintiff charges, sell lots belonging to plaintiff without written authority, the latter has lost nothing. His title is not impaired, and he is as free as he ever was to dispose of his property as he sees fit. All that Lancaster is asking is that plaintiff pay the balance due on the purchase price of the land. And, putting aside, as not provable, any and all verbal agreements for the sale of the land, surely Lancaster is entitled to be paid the price of the land, the title to which stands yet in the name of the plaintiff or his transferees.

The judgment appealed from is annulled, and it is now adjudged and decreed that the writ of injunction be dissolved and that plaintiff's demands be rejected and his suit dismissed at his cost.

MONROE, C. J., dissents.

### On Application for Rehearing.

DAWKINS, J. This case seems to have been submitted on the trial below largely upon the assumption by the plaintiff of the correctness of the judgment of the lower court in allowing plaintiff the entire relief prayed for on hearing of a rule for a subpœna duces tecum. That ruling was manifestly erroneous, and, but for it, plaintiff would no doubt have attempted to prove his case in a proper manner.

[6, 7] Again, we can see no reason why an owner of real property may not ratify sales made by an unauthorized agent, or one acting under verbal authority, and then claim of such person or agent an accounting. The oral evidence, in that event, would not be received for the purpose of proving title to real property, or for proving a procuration for that purpose, but merely for the purpose of an accounting on the part of the alleged agent for the funds so received for the account of the owner.

It is therefore ordered that the rehearing prayed for by plaintiff be and the same is

hereby granted, and this case is remanded to the lower court for the purpose of receiving testimony on the claim for an accounting under the plea of payment and demand for judgment for funds so received, as well as such evidence as the defense may produce in rebuttal of such contention.