DAWKINS, J.
On May 24, 1904, the Aztec Land Company, Limited, filed in the civil district court for the parish of Orleans a proceeding, praying for the confirmation of its title, and that it be sent into possession of property described as follows:
“Four certain lots of ground and improvements thereon; in the Second district of the city of New Orleans, La., in square No. 469, bounded by Bayou St. John, Dumaine, St. Philip and Genois streets; said lots measure 121 feet front on Bayou St. John by 150 feet in depth. * * * ”
It alleged that it had acquired said property from .the state auditor on October 20, 1902, under and by virtue of the provisions of Act No. 80 of 1888, as amended by Act 126 of 1896, providing for the sale of property forfeited to the state for taxes.
June 14, 1904, John E. Dupuy filed a petition for injunction to restrain the sheriff from placing the said company in possession of certain property of which he claimed the possession, and in which he alleged that he was not in possession of any such lots as those claimed by plaintiff ; that he did not possess any property in any square bounded by the streets mentioned; that there was no such square, and no such streets as St. Philip and Genois streets in the locality of the property which he possessed; and that he knew of no property assessed in the name of Robert Simon. He further alleged that he was in possession of and owned property described as follows:
“ * * * A certain piece of property fronting on Bayou St. John on the northwest bank adjoining the property of Mr. Arthur Blanc and measuring 119 feet on said bayou, 170 feet, in depth on the side nearest the property of Arthur Blanc and 150 feet, more or less in depth on the other side, said piece of property forming a perfect triangle.”
Dupuy further alleged as follows:
“Your petitioner now avers that if for any reason, which he does not at present ascertain, it should bo decided that the property of petitioner, which he has above described, is the same as that claimed by plaintiff, then the same does not belong to the plaintiff, for the reasons that the state of Louisiana never had a title to it, none of the formalities prescribed by law having been fulfilled in the seizure notice and advertisement and sale to the state by the tax collector, in 1885, and for the further rea *675 son that said property was sold by the tax collector on the 12th day of May, 1897,' and adjudicated to L. W. Hammond, whose title is still of record. Petitioner now annexes the notice of seizure, and a plan of the property owned by petitioner.”
And he prayed that the sheriff be enjoined from seizing and taking possession of the property described above as being owned and' possessed by him, the said Dupuy.
In answer to the suit for injunction, the defendant therein, Aztec Land Company, Limited, alleged its purchase from the auditor of the property described in its petition for confirmation of title above set out; and that the same had been sold to the state for the delinquent taxes of the year 1882, assessed in the name of Robert Simon, on January 21, 1885; that the said property had previously been forfeited to the state for the unpaid taxes of the years 1871 to 1877, inclusive, and had never been redeemed. Defendant further averred as follows:
“That respondent and its author in title have bad possession of said property for 30 years, under and by virtue of said tax sale and forfeitures; that its title thereto has been quieted by the prescription of 3 years,, as provided in article 233 of the state Constitution of 1898; and that respondent pleads said prescription in bar of this action.”
Respondent prayed that the suit for injunction be dismissed at the cost of the said plaintiff.
Thereafter, on February 8, 1905, John F. Dupuy filed an amended petition in said suit to enjoin the Aztec Land Company from being placed in possession of the property, in which he alleged that at the time of his purchase he had taken possession of a triangular piece of property having a greater length on two sides, and a smaller amount on the other line, than described “in petitioner’s sale”; that the property was at the time inclosed with fences, and taken possession of by him in its entirety, and that he had been in the continuous, uninterrupted, peaceable, public) and unequivocal possession thereof since his purchase on April 30, 1900; that his vendors, Robert Simeon and his heirs had been in the same “qualified possession” since the 8th of September, 1859. He further attacked the sale by the auditor to the Aztec Land Company, Limited, on the following grounds to wit:
First. That the auditor was without power to sell the said property without readvertising it under the Act No. 80 of 1888, and which was not done.
Second. That it was the duty of the auditor, if he had the authority to make said sale, to have sold it to any person offering to pay the price fixed by the Legislature, and that to protect himself against possible dispute or litigation, he (Dupuy) had, on December 18, 1899, deposited with John Brewster the sum of $44.13, for the purchase of said property, and on the 14th of February, 1900, said Brewster had returned the same, because no deed could be obtained from the auditor; and that previous to said deposit he had agreed to purchase said property from the heirs of Robert Simeon and wife. He prayed that the injunction be perpetuated against the disturbance of his possession of the property claimed by him.
The Aztec Land Company, Limited, filed a plea of estoppel and exception of no cause of action to the original and amended petitions. The plea of estoppel did not set forth the grounds upon which it was founded, but the minutes of the court of- date May 24, 1905, show that both it and the exception of no cause of action were overruled. May 26, 1905, default was entered on the petition for injunction, and again on October 25th of the same year another default was entered. Thereafter there are minute entries of October 25, 1905, showing that the case was continued to November 8, 1905, and on November 8th the case was “continued indefinitely.” There appears in the record as filed on October 27,1905, a motion to set aside the default *677 on the ground that the exceptions above mentioned had never been tried or otherwise disposed of. We find nothing showing disposition of this motion, but the next minute entry is of date April 7,1915, and shows that the case was continued for argument. However, there appears in the record a motion and judgment dated October 10,1912, dismissing the injunction suit of John P. Dupuy for want of prosecution for more than five years.
On January 15, 1915, John P. Dupuy appeared and filed a petition bearing the same number as the original suit, in which he alleged that an injunction had been obtained as above set forth, and that the case had been partially tried, but no judgment had been rendered on the merits; that the attorney for the Aztec Land Company, Limited, had filed a motion to dismiss said suit on the ground that it had been abandoned under the 5-year prescriptive period, and that judgment was rendered on the same day, October 10, 1912, decreeing the suit to have been abandoned, and -which it was alleged was null on account of having been rendered during va,cation; that the prescription of 5 years did not apply to said cause for the reason that the injunction proceeding was merely an answer to the action for possession by the Aztec Land Company, Limited; that petitioner has continued in possession, and that prescription on that account has been interrupted. The second petition for injunction otherwise set up the same grounds of attack upon the title of the said company as contained in the original. The prayer was for a writ of injunction that the judgment rendered on the 10th day of October, 1912, be annulled, and “that the title of the state of Louisiana to the property owned by petitioner be set aside and annulled.”
In answer to the petition just referred to, the Aztec Land Company averred the regularity and validity of the judgment of date October 10, 1912, and pleaded the same as res adjudieata to the demands of Dupuy, and in all other respects adopted the same defenses as were urged to the first petition for injunction.
On January 6, 1916, Dupuy filed an amended petition, in which he alleged that on the 24th day of May, 1904, judgment had been rendered, ordering a writ of seizure and possession to issue against petitioner; that the same had been enjoined on June 14, 1904; that by ex parte motion of date October 10, 1912, judgment had been entered, dismissing said injunction as abandoned; that on the 24th day of May, 1914, 10 years had elapsed since the rendition of the said judgment of possession, and petitioner pleaded the prescription of 10 years, for the reason that the same had not been revived. He further alleged that, in addition to being a defendant in possession, he was a taxpayer in the city of New Orleans, and that if the title executed by the state auditor in violation of Act No. 126 of 1896 were maintained, the city would lose her taxes upon the property sought to be recovered herein, and that petitioner was entitled to set up the nullity of the deed made by the state auditor to the land company, as in violation of said act. He prayed that the prescription of 10 years be sustained, and that the land company’s title be declared hull and void.
The case was finally tried, and on March 1, 1916, there was judgment in the district court in favor of John P. Dupuy, declaring void the ex parte judgment of October 10, 1912, perpetuating the injunction, and recalling the order of possession in favor of Aztec Land Company, Limited, and declaring null and void the auditor’s deed of October 20, 1902, in so far as the property owned and possessed by Dupuy was concerned, and describing it as set out in his petition for injunction.
The case was appealed to this court, and, on March 31, 1919, it was by us transferred to the Court of Appeal for the parish of Or *679 leans. The Court of Appeal reversed the judgment of the district court, dismissed the injunction, and gave judgment quieting the defendant, Aztec Land Company, Limited, in its title under the purchase from the auditor in 1902.
John F. Dupuy having died in the meantime, his widow and heirs applied to this court for certiorari and writ of review, the case was ordered up, and is now before us for determination.
We can hardly imagine a more confused and confusing case than that disclosed by the record as outlined above.
On the Motion to Dismiss the Appeal before the Court of Appeal.
After the record had been transferred by us to the Court of Appeal, appellee, plaintiff in injunction, moved to dismiss, the appeal there on four grounds, to wit:- •
First, because no affidavit had been made by the appellant before the transfer by the Supreme Court, nor since;
Second, that no days of grace are allowed for the transfer;
Third, that the Supreme Court was without jurisdiction to make the transfer; and,
Fourth, that there is no surety on the appeal bond to respond to a judgment rendered by the'Court of Appeal.
[1] On the first point, it is sufficient to say that, inasmuch as this case was transferred by us to the Court of Appeal in 1919, the affidavit provided in Act No. 56 of 1904 was no longer required, for the reason that Act No. 19 of 1912, amending and re-enacting said Act of 1904, omitted the proviso that the appellant should make an affidavit to the effect that the appeal had not been brought here for the purposes of delay, and therefore must have intended to dispense with that requirement. De Brueys v. Burns et al., 144 La. 707, 81 South. 259.
[2] As to the days of grace and delays for appeal, it is sufficient to say that the provisions of law governing these matters are mere legislative enactments, and the Legislature may alter or change them at will. Having passed the statutes referred to, without providing any delays, it must have intended that such matters should be handled with only such dispatch and in such manner as the orderly process of the courts would permit, and that any unusual delay might be averted by proper application to the court ordering the transfer. The statutes in question do, not appear to contemplate any action on the part of the appellant in perfecting the transfer, but seem to imply that it shall be done by order of the court through its ministerial officers.
On the question of the power of the Legislature to enact such statutes, a careful reading thereof will disclose that they in no wise seek to increase or diminish the jurisdiction of the court or courts empowered to make the transfer, but merely provide a fair and just mode of handling cases on appeal, when It appears that the court to which the case is taken is without jurisdiction to -pass upon the issues involved. The only judgment that the court renders in such circumstances, in the sense of exercising its judicial powers under the Constitution, is to decide the question of its jurisdiction; and, when this is done, the law itself has the effect merely of transferring the record, upon the issues to be determined, to the court which, under the Constitution, has the power to decide them.
[3] As to the last point, that there is no surety on the appeal bond to respond to a judgment rendered by the Court of Appeal, it is proper to say, in the first place, that bonds of appeal are not given or worded so as to have the principal and surety respond to the judgment of any particular court, but the condition is that they “shall prosecute” their “appeal and satisfy whatever judgment may be rendered against” them; and, in the sec *681 ond place, the Act No. 56 of 1904, as amended by No. 19 of 1912, provides that the “court to which said cause shall have been transferred will proceed with the same in the same manner as if said case had been originally appealed to the proper court.” The Code of Practice fixes the liability of the surety on the appeal bond, and the law just referred to gives the same effect to judgments rendered after a transfer as they would have had if the case had been appealed to such court or courts in the first instance.