165 So. 635

MITCHAM v. MITCHAM et al.

No. 33539.

Nov. 4, 1935.

On Rehearing, Feb. 3, 1936.

Goff & Goff, of Arcadia, for appellants.

Bergeron & Rabun, of Farmerville, for appellee.

BRUNOT, Justice.

There was judgment for the plaintiff in the court of original jurisdiction. The defendants perfected a suspensive appeal from the judgment, returnable to the Court of Appeal, Second Circuit. After the case was submitted in the Court of Appeal, that court found that it was without jurisdiction ratione materiæ and it entered the following order:

"It is therefore ordered that this appeal be transferred to the Supreme Court. The clerk of this court is ordered to transmit the record to the clerk of the Third district court of Union parish that transcript may be made up and filed in the Supreme Court, in keeping with its rules, within thirty days from date hereof." 160 So. 145.

The motion to dismiss is based upon two alleged facts, viz.: That the transcript was not filed in the Supreme Court timely, and that no extension of time

within which to file the transcript in this court was applied for or granted.

It appears that the order or judgment of the Court of Appeal was rendered on April 1, 1935, and that the transcript was filed in this court June 28, 1935. It is, therefore, a fact that the transcript was not filed timely, and this court has judicial knowledge of the fact that no application has been made to it for an extension of time within which to file it. C.P. arts. 587, 883.

It is the duty of the appellants to file the transcript. Abraham v. Wallenberg, 130 La. 1096, 58 So. 895. Where transcript is filed after delays for filing have expired, a motion to dismiss the appeal must prevail. Whitney Central Trust & Savings Bank v. Greenwood Planting & Manufacturing Co., Ltd., 146 La. 572, 83 So. 834. In the transfer of a case by the Court of Appeal to the Supreme Court, it is the duty of the Court of Appeal to fix the return day. Act No. 19 of 1912, amending and re-enacting Act No. 56 of 1904; Scott v. Ratcliff, 167 La. 237, 239, 119 So. 33.

For the reasons assigned, the motion to dismiss this appeal is maintained, and the appeal is therefore dismissed, at appellants' cost.

## On Rehearing.

ODOM, Justice.

Since our original opinion in this case was handed down on November 4, 1935, counsel for appellants have, with leave of this court, presented and filed certain documents which show beyond question that the failure to lodge the transcript in this court within the time specified by the Court of Appeal was due to no fault or laches on the part of appellants or their counsel.

The facts are that on April 1, 1935, the Court of Appeal, Second Circuit, ordered the case transferred to this court and fixed the time within which the transcript should be filed here at thirty days from that date. It was further ordered that the clerk of the Court of Appeal transmit the record to the clerk of the district court from which the case was appealed, in order "that transcript may be made up and filed in the Supreme Court, in keeping with its rules, within thirty days from date hereof." According to that order the transcript should have reached this court not later than May 1. We have before us a certificate made and signed by the clerk of the Court of Appeal showing that he did not return the original record to the clerk of the district court of Union parish until May 14, or fourteen days after the transcript was due here. His delay, he says, was due to an oversight. The clerk of the district court certifies that the record reached his office on May 15. That was too late for him to make up the transcript and forward to this court for filing within the time prescribed by the Court of Appeal.

It appears that the clerk of the Court of Appeal and the attorneys for appellants understood that either party to the suit might, within the delays prescribed by law and the rules of that court, apply for a re-

hearing as in other cases, and. the clerk certifies · that some two or three days before the expiration of the delay for applying for a rehearing, one of the attorneys for appellants came to his office and asked him to forward the record to the clerk of the district court immediately after the order transferring the case became final, and that he promised to do so. The clerk of the district court attached to his certificate a letter dated April 13 written to him by the attorneys for appellants, in which they called his attention to the fact that the Court of Appeal had transferred the case to the Supreme Court. In that letter counsel further say:

"Unless a motion for rehearing is filed by next Monday, the judgment of the Court of Appeal will become final and the record will be returned to you. Would thank you to make up the transcript at the earliest convenience and forward same to the clerk of the Supreme Court. We are handing you a check for $25.00, payable to that clerk and would thank you to forward it with the transcript. When the transcript is ready I wish you would send us your bill for making the same and Mr. Nolen will send you a check immediately. We would have collected the amount when he gave us the check for the Supreme Court but did not know and could not tell what your costs would be."

The clerk of the district court attaches also a copy of a letter dated May 14 written by him to the attorneys for appellants, reading as follows:

"Referring to your letter of April 13 regarding the Mitcham case, I wish to advise that the original record has never been returned from the Court of Appeal."

Mr. W. D. Goff, a member of the law firm of Goff & Goff, attorneys for appellants, has filed an affidavit in which he says that he received the last above-quoted letter from the clerk of the district court on May 15; that he immediately went to Shreveport, got the record from the clerk of the Court of Appeal, and carried it to Union parish and delivered it to the clerk of the district court.

It thus appears that the delay allowed by the Court of Appeal for filing the transcript in this court had lapsed when counsel for appellants were notified that the record had not been received by the clerk of the district court. But no fault or laches can be attributed to either appellants or their counsel. They did all they could to comply with the court's order. To penalize the appellants by dismissing their appeal solely because the transcript was not filed in this court within the time specified would be unjust under the circumstances here disclosed.

In cases involving transfers from the Courts of Appeal to this court and from this court to the Courts of Appeal, we have repeatedly refused to dismiss appeals where the transcripts were not filed within a reasonable time, if the delay was not attributable to the fault of the appellants. De Brueys v. Burns et al., 144 La. 707, 81 So. 259; In re Aztec Land Co., 147 La. 672, 85 So. 634; Gilmore v. Lyon Lumber Co., 159 La. 18, 105 So. 85.

Where cases are appealed to the wrong court, the court to which they are

erroneously appealed has the right under Act No. 56 of 1904, as amended and re-enacted by Act No. 19 of 1912, to trans-fer said cases to the proper court instead of dismissing the appeal, but neither of those acts specifies any time limit within which the transfer may be made. The original act, as amended, merely author-izes, but does not require, the court to transfer such cases, but provides that when cases are transferred "the Court to which said cases shall have been trans-ferred, will proceed with the same in the same manner as if said case had been or-iginally appealed to the proper Court."

Presumably because no time for mak-ing the transfer is specified in the statute, the courts did not originally fix any time in their orders making the transfer. This brought about confusion in many cases, and efforts were made by appellees to have appeals dismissed on account of what were termed "unreasonable delays" in fil-ing the transcripts in the court to which the transfers were made. So in the case of Scott v. Ratcliff, 167 La. 237, 119 So. 33, 34, we said that inasmuch as the Leg-islature had fixed no time for making the transfers, it was no doubt intended "to leave that question open for determination by the appellate court transferring the case." And we said further that it was the duty of the court making the transfer to fix the time. Since that case was de-cided in October, 1928, the courts have as a general practice fixed the delay within which the transcript should be filed in the proper court. That was done in the pres-ent case.

Assuming that the Court of Appeal in-tended in this case that the transcript should be filed in the Supreme Court with-in thirty days from the date of its order, the court evidently overlooked the fact that its order making the transfer would not become final until the end of the delay allowed either party to make application for a rehearing, and not then if such ap-plication were made. Under Act No. 16 of 1910 judgments rendered in Courts of Appeal become final on the fifteenth cal-endar day after their rendition, and in the interval parties having an interest may apply for a rehearing. If an application for a rehearing is seasonably filed, the judgment does not become final until after the application is finally disposed of. State ex rel. Hall v. Judges, 50 La.Ann. 409, 23 So. 297; State ex rel. Thrower v. Judges, 50 La.Ann. 644, 23 So. 911.

We adhere to our ruling in the case of Scott v. Ratcliff, supra, that "the court therefore, in ordering an appeal to be transferred, may, within its sound discre-tion, impose upon the appellant such con-ditions as it sees fit. One of the condi-tions which the court, in allowing the transfer of an appeal, should impose upon the appellant, is a limit of time within which he should file the record in the court to which the transfer is to be made. The delay should be longer or shorter, de-pending upon the nature and extent of the record."

We did not mean by this that the Courts of Appeal, in ordering cases transferred to this court, should fix a definite time from the date of their orders transferring

the case in which the transcripts should be filed in this court. That would not be practicable, because the Courts of Appeal cannot know when their judgments will become final. In no event do they become final until fifteen calendar days after rendition, and, if an application for rehearing is timely filed, then they do not become final until the application is finally disposed of, which is indefinite. If the delay allowed for filing the transcripts in the Supreme Court should begin to run on the date on which the order making the transfers is signed, it might happen that the full time allowed for making the transfer would lapse before the order became final.

Nor did we mean that the Courts of Appeal should impose upon appellants the duty of seeing that the records are physically transferred from their courts back to the clerks of the district courts from which the cases were appealed. That is a duty of the clerks of the courts ordering the transfers and appellants can exercise no control over those clerical officers.

In all cases of this kind the Courts of Appeal should order their clerks to send the record back to the clerk of the district court from which the case was appealed, as soon as the order making the transfer becomes final, and to immediately notify the appellant. The effect of such an order is to put the case back where it was before being erroneously transferred to the Court of Appeal. From there the appeal goes to the Supreme Court under the rules governing appeals to that court from district courts, and inasmuch as there is no return day fixed, the Court of Appeal should fix one in its order transferring the case; that is, it should fix the time limit within which the transcript is to be filed in the Supreme Court, the time fixed to be computed from the date on which the record is received by the district court clerk. Under Act No. 106 of 1908, it is the duty of district judges to fix return days, within certain limits, in all cases appealable to the Supreme Court. But when cases are appealed from their courts to the Courts of Appeal and the appeals are perfected, district judges lose jurisdiction and cannot fix a return day after cases are ordered transferred to the Supreme Court by the Courts of Appeal. For that reason if a return day is fixed at all it must be fixed by the Courts of Appeal, which courts, as we said in Scott v. Ratcliff, supra, are vested with that authority.

When cases are transferred by the Courts of Appeal to the Supreme Court and the records are returned to the clerks of the district courts from which the cases were appealed, it then becomes the duty of appellants to see that the transcripts are filed in this court in accordance with the rules which prevail in cases appealed from the district courts directly to this court, and the decisions cited in our former opinion are applicable. But those cases are not applicable here because the record was not promptly returned to the district clerk by the clerk of the Court of Appeal.

For the reasons assigned the motion to dismiss the appeal is overruled.